tion. Concur—Tom, J. P., Ellerin, Rubin, Andrias and Buckley, JJ.

■ In the Matter of SANDRA WALKER, Petitioner, v RUBEN FRANCO, as Chair of the New York City Housing Authority, Respondent. [713 NYS2d 164] —Determination of respondent Ruben Franco, as Chair of the New York City Housing Authority, dated February 23, 1998, which terminated petitioner's tenancy on the ground of nondesirability, confirmed, the petition denied, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, Bronx County [George Friedman, J.], entered on or about October 29, 1998) dismissed, without costs.

During a search of petitioner's apartment, which was conducted pursuant to a no-knock search warrant, 151 vials of crack cocaine, packaged and ready for sale, a beeper, and a number of plastic bags and empty vials were thrown from a window of the apartment. After entering the apartment, the police discovered clear plastic vials with various tops and several cell phones. A triple-beam scale was also seized from a closet.

At the hearing, petitioner admitted that, prior to the search, she knew the triple-beam scale was in her apartment. She claimed, however, that she was ignorant of any drug activity taking place in her apartment and sought to attribute any such activity to either her son, who was living with her, or to a man named Edward Ely, who was the father of her grandchildren. Ely, she claimed, had come to her apartment just before the warrant was executed to get the telephone number of her daughter so that he could see his children.

Based upon this evidence, the Hearing Officer determined that petitioner's tenancy should be terminated on grounds of nondesirability. We conclude that this determination was entirely appropriate (see, Matter of Burgess v Popolizio, 169 AD2d 831).

The evidence of a substantial amount of ready-to-sell crack cocaine and marketing paraphernalia was sufficient to support respondent's determination of nondesirability notwithstanding petitioner's claim that she did not know that her son or Edward Ely were involved in drug activity in her apartment. The Hearing Officer found petitioner's claims of ignorance not credible and we find no basis to disturb that credibility determination. Moreover, petitioner's conceded awareness of the triple-beam scale, an item which is typically used in the drug trade, belies her claim of ignorance.

We point out that judicial review of these administrative proceedings is limited to determining whether there exists "substantial evidence" to support the determination (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 179). The proof must be more than "seeming or imaginary" (*id.*, at 180). This is a minimal burden of proof on the agency to whose discretion the day-to-day operation of public housing has been committed by law. The decision need not be the best which could have been made and need not be free from flaws—it must only have a rational basis (*see, Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239). Credibility of witnesses is resolved by the Hearing Officer (*see, Matter of Woody v Franco*, 260 AD2d 186, *lv denied* 94 NY2d 754).

Notwithstanding this, the dissent concludes that termination of petitioner's tenancy was improper because petitioner purportedly did not have proper notice of the proceedings and was not granted an adjournment to obtain counsel. This, it is claimed, deprived petitioner of due process. We cannot agree.

On this appeal, petitioner has ultimately pursued only one issue, namely, whether her lease can be terminated for the wrongdoing of her adult son who allegedly moved before the hearing. While her reply brief makes a vague and fleeting reference to the words "Due Process," this reference cannot, even by the most tortured interpretation, be construed as advancing a claim that she lacked proper notice of the proceedings or that she was not given an opportunity to obtain counsel. We, therefore, find it anomalous that the dissent advances an argument, *sua sponte*, that petitioner herself did not believe merited appellate attention.

Finally, we note that petitioner's claim that she was unaware of the drug activity taking place in her apartment strains all bounds of credulity since petitioner was placed on probation before as a result of her son's drug involvement. In any event, all residents of public housing have a right to live in a safe, drug-free environment, which right is not diminished by the length of petitioner's tenancy, or her claim of blind ignorance. Concur—Nardelli, J. P., Buckley and Friedman, JJ.

Rubin and Andrias, JJ., dissent in a memorandum by Andrias, J., as follows: Not only is there no evidence that petitioner, a 55-year-old woman who lived in her apartment for 25 years and appeared *pro se*, was given the requisite notice of the charges against her and a reasonable opportunity to obtain counsel to represent her at the administrative hearing held almost three years after the incident in question, but the rec-

ord lacks substantial evidence to support the Hearing Officer's finding that petitioner possessed crack cocaine in her apartment in quantities sufficient to imply an intent to sell, or for that matter, that she possessed any contraband.

It is fundamental that the government cannot deprive a private citizen of her continued tenancy without affording her adequate procedural safeguards, even if public housing could be deemed to be a privilege (*Escalera v New York City Hous. Auth.*, 425 F2d 853, 862, *cert denied* 400 US 853; *see, Goldberg v Kelly*, 397 US 254, 262-263). Included in the fundamental requirement of a fair trial, absent a waiver, is the entitlement of the party whose rights are being determined to be fully apprised of the nature of the evidence against her, with the concomitant opportunity to cross-examine witnesses, inspect documents and offer evidence in rebuttal or explanation (*Matter of Simpson v Wolansky*, 38 NY2d 391, 395-396; *see, Escalera v New York City Hous. Auth., supra*).

New York City Housing Authority (NYCHA) Termination of Tenancy Procedures ¶ 4 states, in pertinent part, that "[a] copy of these procedures shall be enclosed with the Notice to the tenant * * * The Notice [of Charges] shall be served upon the tenant or any adult member of his/her family, or by certified mail, postpaid, and addressed to his/her apartment in the project." The conference between the project manager and the tenant does not cure the deficiency in the notice (*Escalera v New York City Hous. Auth., supra*). In addition, while an indigent tenant does not have a constitutional right to assigned counsel (*see, Donaldson v State of New York*, 156 AD2d 290, 293, *lv dismissed in part and denied in part* 75 NY2d 1003), a private citizen may not be deprived of continued tenancy in a public housing project without affording her the opportunity to procure counsel (*see, Escalera v New York City Hous. Auth., supra*, at 861, and cases cited therein). NYCHA Termination of Tenancy Procedures ¶ 5, in accordance with these tenets, directs the Hearing Officer to be "liberal in granting reasonable adjournments requested by the tenant * * * for good cause shown, to assure that there be no doubt that the tenant is afforded every due process right."

In the case at bar, although petitioner did not specifically request an adjournment, such a request may be reasonably inferred where she appeared without counsel and asserted that she did not have any knowledge of the charges prior to the hearing and that she needed a lawyer because she did not understand the nature of the proceedings. Moreover, the hearing transcript demonstrates that respondent did not attempt to

offer any evidence that petitioner did, in fact, receive the notice of charges and the adjournment letter she presented was devoid of any notice of her right to counsel.

The Hearing Officer immediately proceeded with the hearing after petitioner made her assertion of no prior knowledge. Thus, no inference can be made from the record that the Hearing Officer possessed information that petitioner had received proper notice of the hearing and his failure to adjourn the hearing so that she could obtain counsel was tantamount to arbitrary and capricious behavior which effectively deprived her of her due process right to confront and cross-examine the opposing witness and to present evidence in support of her cause. Given these circumstances, it is readily apparent from the record that petitioner merely succumbed to the proceedings, rather than affirmatively waiving her rights.

Furthermore, that petitioner's project manager may have earlier informed her of the pending proceedings is not only inapposite, but also fails to sustain respondent's implication that petitioner should have known the specifications of the charges three years later. More important, respondent's failure to explain the basis for the original adjournment which ultimately led to the rescheduled hearing three years later only serves to belie the assumption that petitioner had notice of the charges against her.

At the administrative hearing held on January 29, 1998, respondent's only witness, Detective Jeffrey Stevens of the Housing Authority Police, testified that, at about 9:00 P.M. on March 16, 1995, he and a team of ten other police officers executed a no-knock search warrant on petitioner's apartment. The detective testified that, when the police entered, there were four adults and two children in the four-bedroom apartment. The petitioner and a friend were up front in one of the first two bedrooms and "two males", petitioner's 25-year-old son Damon and one Frank Davis, also known as Edward Ely, were "in the far back room" where clear plastic vials with various tops, three cellular phones, a battery charger and, the detective believed, a triple-beam scale or a mini scale were recovered. The detective also testified that, as they entered the apartment, the team received a radio transmission from other officers stationed behind the building that they had seen drugs thrown out the window.

While it is undisputed that 151 vials of crack, a beeper and a clear bag of empty vials were thrown out the back window of the apartment as the police entered, there is no evidence petitioner had any knowledge of them or for that matter what

her son or Davis may or may not have been doing in the back bedroom or that there was any drug paraphernalia there. In fact, the so-called "triple beam scale" was discounted by the Hearing Officer after the *pro se* petitioner pointed out that the scale was broken and had been packed away in a front closet far from the back room where her son and Davis were found, and the detective conceded that the scale was found in a closet, that he did not recall its condition and that he never attempted to see if it worked. Significantly, although petitioner, her friend, her son and Davis were taken into custody, there is no evidence that petitioner or her son were ever prosecuted and no disposition regarding Davis was introduced by the Housing Authority.

No warrant or supporting affidavit was ever introduced at the hearing, without which there is no evidence of prior sales out of the apartment, the prior presence of drugs in the apartment, or any course of conduct evidence that would support an inference that petitioner knew drugs were in her apartment or were being sold from her apartment. Thus, while it can reasonably be inferred that narcotics were present in petitioner's apartment on March 16, 1995, there is no basis under criminal (*see*, Penal Law § 220.25 [2]) or civil standards of proof to conclude that she unlawfully possessed these drugs, with intent to sell, or otherwise.

Unlike *Jones v New York City Hous. Auth.* (222 AD2d 260, *lv denied* 88 NY2d 807) and *Matter of Woody v Franco* (260 AD2d 186, *lv denied* 94 NY2d 754), where there was overwhelming evidence that petitioner had permitted his apartment to be used to conduct a large scale crack operation (*Jones*) or where a large quantity of narcotics was found in plain view (*Woody*), here no drugs were found in open view, there was no evidence of preparation for sale, and what was recovered was not in proximity to petitioner. Thus, the Hearing Officer's conclusion that petitioner "did possess crack cocaine in her apartment in quantities sufficient to imply an intent to sell" is not supported by substantial evidence and his decision fails to address any factor that would lead to such an inference.

Finally, with regard to the drastic penalty imposed, paragraph 6 (d) of the Termination of Tenancy Procedures provides that if the charges are based upon the non-desirable acts of a person other than the tenant, "it is the Housing Authority's responsibility to prove that the offender occupied the premises at the time of the offense. However, even if the Housing Authority proves this, the tenant may still show that the offender has permanently moved out by the time of the hearing" (*see also*,

*Matter of Blanco v Popolizio*, 190 AD2d 554, 556). Paragraph 13 of the NYCHA Termination of Tenancy Procedures does not permit termination of the tenancy where the offender has been removed from the household (*see, Matter of Brown v Popolizio*, 166 AD2d 44, 56). The tenant has the right to offer any evidence to the Hearing Officer that an offender is no longer occupying the tenant's apartment, including any spoken or written statement by the tenant or other persons (*id.*, at 51). Absent substantial evidence of occupancy, the nondesirable acts of the offender, if true, may not be imputed to the petitioner solely because of her relationship to him (*id.*, at 52; *Matter of Hagan v Franco*, 272 AD2d 143; *Matter of Stroman v Franco*, 253 AD2d 398, *lv denied* 93 NY2d 817).

Petitioner's testimony that Damon was no longer living with her at the time of the hearing was unequivocal (*cf., Matter of Jimenez v Popolizio*, 180 AD2d 590) and is undisputed on the record; thus, even if the Hearing Officer, *sub silentio*, based his decision on a finding that Damon resided with petitioner at the time of the hearing, respondent's findings and the penalty imposed are unsupported by the record (*Matter of Means v Franco*, 248 AD2d 262; *Matter of Cabrera v New York City Hous. Auth.*, 187 AD2d 330, 331).

Accordingly, the petition should be granted and respondent's determination dated February 23, 1998, which terminated petitioner's tenancy on the ground of nondesirability, should be annulled.