# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT *v.* RUCKER ET AL.

No. 00–1770.   Argued February 19, 2002—Decided March 26, 2002*

---

*Together with No. 00–1781, *Oakland Housing Authority et al.* v. *Rucker et al.*, also on certiorari to the same court.

*James A. Feldman* argued the cause for the federal petitioner. With him on the briefs were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Kneedler, Barbara C. Biddle, Howard S. Scher, Richard A. Hauser, Carole W. Wilson, Howard M. Schmeltzer,* and *Harold J. Rennett. Gary T. Lafayette*

argued the cause for the private petitioners in No. 00–1781. With him on the briefs was *Susan T. Kumagai.*

*Paul Renne* argued the cause for respondents in both cases. With him on the brief were *James Donato, Whitty Somvichian,* and *John Murcko.*†

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

With drug dealers "increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants," Congress passed the Anti-Drug Abuse Act of 1988. § 5122, 102 Stat. 4301, 42 U. S. C. § 11901(3) (1994 ed.). The Act, as later amended, provides that each "public housing agency shall utilize leases which . . . provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U. S. C. § 1437d(*l*)(6) (1994 ed., Supp. V). Petitioners say that this statute requires lease terms that allow a local public

---

†Briefs of *amici curiae* urging reversal were filed for the Council of Large Public Housing Authorities et al. by *William F. Maher* and *Robert A. Graham;* for the International City-County Management Association et al. by *Richard Ruda* and *James I. Crowley;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo* and *Richard A. Samp.*

Briefs of *amici curiae* urging affirmance were filed for AARP et al. by *Catherine M. Bishop* and *Julie E. Levin;* for the American Civil Liberties Union et al. by *Mark J. Lopez, Steven R. Shapiro,* and *Alan L. Schlosser;* for the National Network to End Domestic Violence et al. by *Bruce D. Sokler* and *Fernando R. Laguarda;* for the Pennsylvania Association of Resident Councils et al. by *Eileen D. Yacknin* and *Richard S. Matesic;* and for Lawrence Lessig et al. by *David T. Goldberg* and *Daniel N. Abrahamson.*

*Kirsten D. Levingston, Michael S. Feldberg,* and *Martha F. Davis* filed a brief for the Coalition to Protect Public Housing et al. as *amici curiae.*

housing authority to evict a tenant when a member of the tenant's household or a guest engages in drug-related criminal activity, regardless of whether the tenant knew, or had reason to know, of that activity. Respondents say it does not. We agree with petitioners.

Respondents are four public housing tenants of the Oakland Housing Authority (OHA). Paragraph 9(m) of respondents' leases, tracking the language of § 1437d($l$)(6), obligates the tenants to "assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in . . . [a]ny drug-related criminal activity on or near the premise[s]." App. 59. Respondents also signed an agreement stating that the tenant "understand[s] that if I or any member of my household or guests should violate this lease provision, my tenancy may be terminated and I may be evicted." *Id.*, at 69.

In late 1997 and early 1998, OHA instituted eviction proceedings in state court against respondents, alleging violations of this lease provision. The complaint alleged: (1) that the respective grandsons of respondents William Lee and Barbara Hill, both of whom were listed as residents on the leases, were caught in the apartment complex parking lot smoking marijuana; (2) that the daughter of respondent Pearlie Rucker, who resides with her and is listed on the lease as a resident, was found with cocaine and a crack cocaine pipe three blocks from Rucker's apartment;[1] and (3) that on three instances within a 2-month period, respondent Herman Walker's caregiver and two others were found with cocaine in Walker's apartment. OHA had issued Walker notices of a lease violation on the first two occasions, before initiating the eviction action after the third violation.

United States Department of Housing and Urban Development (HUD) regulations administering § 1437d($l$)(6) require

---

[1] In February 1998, OHA dismissed the unlawful detainer action against Rucker, after her daughter was incarcerated, and thus no longer posed a threat to other tenants.

lease terms authorizing evictions in these circumstances. The HUD regulations closely track the statutory language,[2] and provide that "[i]n deciding to evict for criminal activity, the [public housing authority] shall have discretion to consider all of the circumstances of the case . . . ." 24 CFR § 966.4(*l*)(5)(i) (2001). The agency made clear that local public housing authorities' discretion to evict for drug-related activity includes those situations in which "[the] tenant did not know, could not foresee, or could not control behavior by other occupants of the unit." 56 Fed. Reg. 51560, 51567 (1991).

After OHA initiated the eviction proceedings in state court, respondents commenced actions against HUD, OHA, and OHA's director in United States District Court. They challenged HUD's interpretation of the statute under the Administrative Procedure Act, 5 U. S. C. § 706(2)(A), arguing that 42 U. S. C. § 1437d(*l*)(6) does not require lease terms authorizing the eviction of so-called "innocent" tenants, and, in the alternative, that if it does, then the statute is unconstitutional.[3] The District Court issued a preliminary injunction, enjoining OHA from "terminating the leases of tenants pursuant to paragraph 9(m) of the 'Tenant Lease' for drug-related criminal activity that does not occur within the ten-

---

[2] The regulations require public housing authorities (PHAs) to impose a lease obligation on tenants:

"To assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in:

"(A) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the PHA's public housing premises by other residents or employees of the PHA, or

"(B) Any drug-related criminal activity on or near such premises.

"Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit." 24 CFR § 966.4(f)(12)(i) (2001).

[3] Respondents Rucker and Walker also raised Americans with Disabilities Act claims that are not before this Court. And all of the respondents raised state-law claims against OHA that are not before this Court.

ant's apartment unit when the tenant did not know of and had no reason to know of, the drug-related criminal activity." App. to Pet. for Cert. in No. 00–1770, pp. 165a–166a.

A panel of the Court of Appeals reversed, holding that § 1437d(*l*)(6) unambiguously permits the eviction of tenants who violate the lease provision, regardless of whether the tenant was personally aware of the drug activity, and that the statute is constitutional. See *Rucker* v. *Davis*, 203 F. 3d 627 (CA9 2000). An en banc panel of the Court of Appeals reversed and affirmed the District Court's grant of the preliminary injunction. See *Rucker* v. *Davis*, 237 F. 3d 1113 (2001). That court held that HUD's interpretation permitting the eviction of so-called "innocent" tenants "is inconsistent with Congressional intent and must be rejected" under the first step of *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984). 237 F. 3d, at 1126.

We granted certiorari, 533 U. S. 976 (2001), 534 U. S. 813 (2001), and now reverse, holding that 42 U. S. C. § 1437d(*l*)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity.

That this is so seems evident from the plain language of the statute. It provides that "[e]ach public housing agency shall utilize leases which . . . provide that . . . any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U. S. C. § 1437d(*l*)(6) (1994 ed., Supp. V). The en banc Court of Appeals thought the statute did not address "the level of personal knowledge or fault that is required for eviction." 237 F. 3d, at 1120. Yet Congress' decision not to impose any

qualification in the statute, combined with its use of the term "any" to modify "drug-related criminal activity," precludes any knowledge requirement. See *United States* v. *Monsanto*, 491 U. S. 600, 609 (1989). As we have explained, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States* v. *Gonzales*, 520 U. S. 1, 5 (1997). Thus, *any* drug-related activity engaged in by the specified persons is grounds for termination, not just drug-related activity that the tenant knew, or should have known, about.

The en banc Court of Appeals also thought it possible that "under the tenant's control" modifies not just "other person," but also "member of the tenant's household" and "guest." 237 F. 3d, at 1120. The court ultimately adopted this reading, concluding that the statute prohibits eviction where the tenant, "for a lack of knowledge or other reason, could not realistically exercise control over the conduct of a household member or guest." *Id.*, at 1126. But this interpretation runs counter to basic rules of grammar. The disjunctive "or" means that the qualification applies only to "other person." Indeed, the view that "under the tenant's control" modifies everything coming before it in the sentence would result in the nonsensical reading that the statute applies to "a public housing tenant . . . under the tenant's control." HUD offers a convincing explanation for the grammatical imperative that "under the tenant's control" modifies only "other person": "by 'control,' the statute means control in the sense that the tenant has permitted access to the premises." 66 Fed. Reg. 28781 (2001). Implicit in the terms "household member" or "guest" is that access to the premises has been granted by the tenant. Thus, the plain language of § 1437d(*l*)(6) requires leases that grant public housing authorities the discretion to terminate tenancy without regard to the tenant's knowledge of the drug-related criminal activity.

Comparing § 1437d(*l*)(6) to a related statutory provision reinforces the unambiguous text. The civil forfeiture statute that makes all leasehold interests subject to forfeiture when used to commit drug-related criminal activities expressly exempts tenants who had no knowledge of the activity: "[N]o property shall be forfeited under this paragraph . . . by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U. S. C. § 881(a)(7) (1994 ed.). Because this forfeiture provision was amended in the same Anti-Drug Abuse Act of 1988 that created 42 U. S. C. § 1437d(*l*)(6), the en banc Court of Appeals thought Congress "meant them to be read consistently" so that the knowledge requirement should be read into the eviction provision. 237 F. 3d, at 1121–1122. But the two sections deal with distinctly different matters. The "innocent owner" defense for drug forfeiture cases was already in existence prior to 1988 as part of 21 U. S. C. § 881(a)(7). All that Congress did in the 1988 Act was to add leasehold interests to the property interests that might be forfeited under the drug statute. And if such a forfeiture action were to be brought against a leasehold interest, it would be subject to the pre-existing "innocent owner" defense. But 42 U. S. C. § 1437(d)(*l*)(6), with which we deal here, is a quite different measure. It is entirely reasonable to think that the Government, when seeking to transfer private property to itself in a forfeiture proceeding, should be subject to an "innocent owner defense," while it should not be when acting as a landlord in a public housing project. The forfeiture provision shows that Congress knew exactly how to provide an "innocent owner" defense. It did not provide one in § 1437d(*l*)(6).

The en banc Court of Appeals next resorted to legislative history. The Court of Appeals correctly recognized that reference to legislative history is inappropriate when the text of the statute is unambiguous. 237 F. 3d, at 1123. Given that the en banc Court of Appeals' finding of textual ambigu-

ity is wrong, see *supra*, at 130–132, there is no need to consult legislative history.[4]

Nor was the en banc Court of Appeals correct in concluding that this plain reading of the statute leads to absurd results.[5] The statute does not *require* the eviction of any ten-

---

[4] Even if it were appropriate to look at legislative history, it would not help respondents. The en banc Court of Appeals relied on two passages from a 1990 Senate Report on a proposed amendment to the eviction provision. 237 F. 3d, at 1123 (citing S. Rep. No. 101–316 (1990)). But this Report was commenting on language from a Senate version of the 1990 amendment, which was never enacted. The language in the Senate version, which would have imposed a different standard of cause for eviction for drug-related crimes than the unqualified language of § 1437d(*l*)(6), see 136 Cong. Rec. 15991, 16012 (1990) (reproducing S. 566, 101st Cong., 2d Sess., §§ 521(f) and 714(a) (1990)), was rejected at Conference. See H. R. Conf. Rep. No. 101–943, p. 418 (1990). And, as the dissent from the en banc decision below explained, the passages may plausibly be read as a mere suggestion about how local public housing authorities should exercise the *"wide* discretion to evict tenants connected with drug-related criminal behavior" that the lease provision affords them. 237 F. 3d, at 1134 (Sneed, J., dissenting).

Respondents also cite language from a House Report commenting on the Civil Asset Forfeiture Reform Act of 2000, codified at 18 U. S. C. § 983. Brief for Respondents 15–16. For the reasons discussed *supra*, at 132 and this page, legislative history concerning forfeiture provisions is not probative on the interpretation of § 1437d(*l*)(6).

A 1996 amendment to § 1437d(*l*)(6), enacted five years after HUD issued its interpretation of the statute, supports our holding. The 1996 amendment expanded the reach of § 1437d(*l*)(6), changing the language of the lease provision from applying to activity taking place "on or near" the public housing premises, to activity occurring "on or off" the public housing premises. See Housing Opportunity Program Extension Act of 1996, § 9(a)(2), 110 Stat. 836. But Congress, "presumed to be aware" of HUD's interpretation rejecting a knowledge requirement, made no other change to the statute. *Lorillard* v. *Pons,* 434 U. S. 575, 580 (1978).

[5] For the reasons discussed above, no-fault eviction, which is specifically authorized under § 1437d(*l*)(6), does not violate § 1437d(*l*)(2), which prohibits public housing authorities from including "unreasonable terms and conditions [in their leases]." In addition, the general statutory provision in the latter section cannot trump the clear language of the more specific § 1437d(*l*)(6). See *Green* v. *Bock Laundry Machine Co.,* 490 U. S. 504, 524–526 (1989).

ant who violated the lease provision. Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," 42 U. S. C. § 11901(2) (1994 ed. and Supp. V), "the seriousness of the offending action," 66 Fed. Reg., at 28803, and "the extent to which the leaseholder has . . . taken all reasonable steps to prevent or mitigate the offending action," *ibid.* It is not "absurd" that a local housing authority may sometimes evict a tenant who had no knowledge of the drug-related activity. Such "no-fault" eviction is a common "incident of tenant responsibility under normal landlord-tenant law and practice." 56 Fed. Reg., at 51567. Strict liability maximizes deterrence and eases enforcement difficulties. See *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 14 (1991).

And, of course, there is an obvious reason why Congress would have permitted local public housing authorities to conduct no-fault evictions: Regardless of knowledge, a tenant who "cannot control drug crime, or other criminal activities by a household member which threaten health or safety of other residents, is a threat to other residents and the project." 56 Fed. Reg., at 51567. With drugs leading to "murders, muggings, and other forms of violence against tenants," and to the "deterioration of the physical environment that requires substantial government expenditures," 42 U. S. C. § 11901(4) (1994 ed., Supp. V), it was reasonable for Congress to permit no-fault evictions in order to "provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs," § 11901(1) (1994 ed.).

In another effort to avoid the plain meaning of the statute, the en banc Court of Appeals invoked the canon of constitutional avoidance. But that canon "has no application in the absence of statutory ambiguity." *United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U. S. 483, 494 (2001). "Any other conclusion, while purporting to be an exercise in

judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, §1, of the Constitution." *United States* v. *Albertini*, 472 U. S. 675, 680 (1985). There are, moreover, no "serious constitutional doubts" about Congress' affording local public housing authorities the discretion to conduct no-fault evictions for drug-related crime. *Reno* v. *Flores*, 507 U. S. 292, 314, n. 9 (1993) (emphasis deleted).

The en banc Court of Appeals held that HUD's interpretation "raise[s] serious questions under the Due Process Clause of the Fourteenth Amendment," because it permits "tenants to be deprived of their property interest without any relationship to individual wrongdoing." 237 F. 3d, at 1124–1125 (citing *Scales* v. *United States*, 367 U. S. 203, 224–225 (1961); *Southwestern Telegraph & Telephone Co.* v. *Danaher*, 238 U. S. 482 (1915)). But both of these cases deal with the acts of government as sovereign. In *Scales*, the United States criminally charged the defendant with knowing membership in an organization that advocated the overthrow of the United States Government. In *Danaher*, an Arkansas statute forbade discrimination among customers of a telephone company. The situation in the present cases is entirely different. The government is not attempting to criminally punish or civilly regulate respondents as members of the general populace. It is instead acting as a landlord of property that it owns, invoking a clause in a lease to which respondents have agreed and which Congress has expressly required. *Scales* and *Danaher* cast no constitutional doubt on such actions.

The Court of Appeals sought to bolster its discussion of constitutional doubt by pointing to the fact that respondents have a property interest in their leasehold interest, citing *Greene* v. *Lindsey*, 456 U. S. 444 (1982). This is undoubtedly true, and *Greene* held that an effort to deprive a tenant of such a right without proper notice violated the Due Process Clause of the Fourteenth Amendment. But, in the present

cases, such deprivation will occur in the state court where OHA brought the unlawful detainer action against respondents. There is no indication that notice has not been given by OHA in the past, or that it will not be given in the future. Any individual factual disputes about whether the lease provision was actually violated can, of course, be resolved in these proceedings.[6]

We hold that "Congress has directly spoken to the precise question at issue." *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S., at 842. Section 1437d(*l*)(6) requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest engages in drug-related activity, regardless of whether the tenant knew, or should have known, of the drug-related activity.

Accordingly, the judgment of the Court of Appeals is reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of these cases.

---

[6] The en banc Court of Appeals cited only the due process constitutional concern. Respondents raise two others: the First Amendment and the Excessive Fines Clause. We agree with Judge O'Scannlain, writing for the panel that reversed the injunction, that the statute does not raise substantial First Amendment or Excessive Fines Clause concerns. *Lyng* v. *Automobile Workers*, 485 U. S. 360 (1988), forecloses respondents' claim that the eviction of unknowing tenants violates the First Amendment guarantee of freedom of association. See 203 F. 3d 627, 647 (2000). And termination of tenancy "is neither a cash nor an in-kind payment imposed by and payable to the government" and therefore is "not subject to analysis as an excessive fine." *Id.*, at 648.