# Use of Appropriations to Pay Travel Expenses of International Trade Administration Fellows

The payment of travel expenses for International Trade Administration fellows is barred by 31 U.S.C. § 1345 because the proposed ITA fellowship program that would bring representatives from various countries to the United States would constitute a "meeting" within the meaning of section 1345.

October 7, 2004

MEMORANDUM OPINION FOR THE DEPUTY SECRETARY
DEPARTMENT OF COMMERCE

You have asked whether a proposed International Trade Administration ("ITA") fellowship program that would bring representatives from various countries to the United States would constitute a "meeting" within the meaning of 31 U.S.C. § 1345 (2000), which prohibits the use of appropriations "for travel, transportation, and subsistence expenses for a meeting," except as specifically provided by law. We conclude that the program would constitute a "meeting" within the meaning of section 1345.

## I.

Located in the Department of Commerce, ITA provides information to American businesses about global markets, ensures that American businesses have access to international markets as required by trade agreements, and safeguards American businesses from unfair competition from dumped and subsidized imports. *See* Overview: About ITA, *available at* http://ita.doc.gov/about.html (last visited Sept. 7, 2004). In view of this mission, ITA would like to develop a management training fellowship program for representatives from several African countries. The program would

> (1) educat[e] African businessmen, and government and parastatal employees about the U.S. financial services market and the U.S. Government programs;
>
> (2) provid[e] an opportunity for American businesses to learn more about potential opportunities in Africa by allowing them to evaluate the risk of doing business in various African countries; and
>
> (3) allow[] the U.S. Government to obtain more concrete information to help it formulate its policy.

Letter for Jack L. Goldsmith III, Assistant Attorney General, Office of Legal Counsel, from Theodore W. Kassinger, Deputy Secretary, Department of Commerce at 1 (Mar. 19, 2004). ITA would bring 12–15 representatives of African countries to the United States for two weeks. The fellows would receive a basic

orientation at the Department of Commerce, and would "meet with other Government trade agencies" and "with various private sector organizations that specialize in the area of financial services." *Id*. "Another potential part of the program," you have explained, "would send the fellows elsewhere in the United States to meet with the various U.S. companies that have projects of interest or with academics who specialize in financial services." *Id*. at 1–2.

You have asked whether section 1345 would prohibit ITA from using appropriations to pay for the fellows' transportation expenses under the program and, in particular, whether the program would constitute a "meeting" within the meaning of section 1345.

## II.

We begin, as we must, with the text of the statute. We "must presume that [Congress] says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

By itself, the text of section 1345 does not naturally support the proposed expenditures. Section 1345 states:

> Except as specifically provided by law, an appropriation may not be used for travel, transportation, and subsistence expenses for a meeting. This section does not prohibit—
>
> (1) an agency from paying the expenses of an officer or employee of the United States Government carrying out an official duty; and
>
> (2) the Secretary of Agriculture from paying necessary expenses for a meeting called by the Secretary for 4-H Boys and Girls Clubs as part of the cooperative extension work of the Department of Agriculture.

31 U.S.C. § 1345. We have previously explained that section 1345 "give[s] force" to the "principle . . . that appropriated funds cannot generally be used to pay the expenses of persons who are not federal employees." Memorandum for Michael E. Shaheen, Jr., Counsel, Office of Professional Responsibility, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Use of Department of Justice Vehicles by Attorney General's Spouse* at 5 (Jan. 23, 1984) ("1984 Vehicles Memorandum").

In everyday usage, the program you have described would involve a "meeting"—indeed, several meetings. *See Webster's Third New Int'l Dictionary* 1404 (2002) ("meeting" means "an act or process of coming together"; "a gathering for business, social, or other purposes"). According to your letter, the fellows will "meet with . . . Government trade agencies," "meet with various private sector organizations," and potentially "meet with various U.S. companies." As the

fellows would not fall within section 1345's general exceptions—for "officer[s] or employee[s] of the United States carrying out an official duty" and "4-H Boys and Girls Clubs"—by its terms section 1345 would require ITA to identify another law specifically providing for the expenditure in order to pay the fellows' travel expenses for the proposed meetings.

The context in which the statute uses the word "meeting" bolsters this conclusion. Section 1345 includes an exception allowing "the Secretary of Agriculture [to] pay[] necessary expenses for a meeting called by the Secretary for 4-H Boys and Girls Clubs as part of the cooperative extension work of the Department of Agriculture." 31 U.S.C. § 1345(2). *See* Pub. Res. No. 74-32, 49 Stat. 387 (1935) (adding this exception to section 1345 during the same session of Congress in which section 1345 was first enacted). Not unlike ITA's mission with respect to America's prospective trading partners in Africa, the "cooperative extension work" of the Department of Agriculture requires it to work with state agricultural colleges to "giv[e] instruction and practical demonstrations . . . in agriculture . . . [and] home economics" to America's future farmers and homemakers. 7 U.S.C. § 342 (2000); *see* Smith-Lever Act, ch. 79, § 2, 38 Stat. 372 (1914); Capper-Ketcham Act, ch. 687, § 1, 45 Stat. 711 (1928). If 4-H "meeting[s]" called by the Secretary of Agriculture in furtherance of his cooperative extension work would, but for this exception, be "meeting[s]" prohibited by section 1345, as the existence and language of the 4-H exception implies, ITA meetings called by the Secretary of Commerce to give instruction in American financial services markets to our future trading partners in Africa also constitute "meeting[s]" to which section 1345 applies.

Comptroller General opinions interpreting section 1345 under analogous circumstances reinforce this analysis.[1] Shortly after Congress first enacted section 1345 in 1935, the Comptroller General issued an opinion concluding that the plain language of the statute prohibited the government from paying the travel and lodging expenses of private citizens who were assisting the Federal Housing Administration in a campaign to encourage the repair and modernization of real estate. *See Federal Housing Administration—Conventions and Gatherings—Statutory Construction*, 14 Comp. Gen. 638 (1935). A few months later, the Comptroller General concluded that section 1345 prohibited the American Battle Monuments Commission from providing private citizens with transportation to monument dedication ceremonies in *Europe. Conventions and Gatherings—Lodging, Feeding, and Transporting*, 14 Comp. Gen. 851 (1935). And more recently, the Comptroller General has concluded that section 1345 prohibits the Mine Safety and Health Administration from paying the travel expenses of miners

---

[1] Although "the Comptroller General, as the agent of Congress, cannot issue interpretations of the law that are binding on the executive branch," *Comptroller General's Authority to Relieve Disbursing and Certifying Officials from Liability*, 15 Op. O.L.C. 80, 82 (1991), his interpretations "may be considered for whatever persuasive value they may offer," *Submission of Aviation Insurance Program Claims to Binding Arbitration*, 20 Op. O.L.C. 341, 343 n.3 (1996).

and mine operators to attend mine safety training conducted by the Mine Safety and Health Administration. *Mine Safety and Health Administration—Payment of Travel Expenses at Seminars*, B-193644, 1979 WL 12354 (Comp. Gen. July 2, 1979). *See also National Highway Traffic Safety Administration—Travel and Lodging Expenses*, 62 Comp. Gen. 531 (1983) (section 1345 prohibits the National Highway Traffic Safety Administration from paying travel expenses for state officials to attend a workshop on odometer fraud); *Travel Expenses—Convention, Conferences, etc.—Attendees—State Officials*, 55 Comp. Gen. 750 (1976) (section 1345 prohibits the Environmental Protection Agency from paying the travel expense of state officials to attend solid waste conference jointly sponsored by the EPA).

All of these sources point to the same conclusion—meetings, as proposed here, between a dozen or more individuals and the representatives of various governmental and private entities qualify as "meeting[s]" within the meaning of section 1345.

You have argued, nevertheless, that one must interpret the word "meeting" in the light of the language and purpose of the original version of section 1345, because Congress did not insert the word "meeting" in the statute until 1982, when it recodified title 31. The joint resolution now codified at section 1345 was originally passed by Congress and signed by the President in 1935. Pub. Res. No. 74-2, 49 Stat. 19 (1935). According to the findings preceding the resolution, "numerous applications [were] being received from various organizations requesting lodging, food, and transportation for the purpose of holding conventions or meetings at Washington and elsewhere," and "the expenditure of Government funds for such purposes is against the policy of Congress." *Id*. To that end, the original joint resolution provided that

> unless specifically provided by law, no moneys from funds appropriated for any purpose shall be used for the purpose of lodging, feeding, conveying, or furnishing transportation to, any conventions or other form of assemblage or gathering to be held in the District of Columbia or elsewhere. This section shall not be construed to prohibit the payment of expenses of any officer or employee of the Government in the discharge of his official duties.

*Id*. (emphasis added). In 1982, Congress substituted the term "a meeting" for "any conventions or other form of assemblage or gathering," Pub. L. No. 97-258, sec. 1, § 1345, 96 Stat. 877, 925 (1982), but stated that the change "may not be construed as making a substantive change in the law[] replaced," *id*. § 4(a), 96 Stat. at 1067.

Even if the word "meeting" means "any conventions or other form of assemblage or gathering," it is difficult to see how the meetings proposed under the ITA program would not constitute a "form of assemblage or gathering." While the word "convention" in isolation may have a more limited connotation, the full phrase "any convention or other form of assemblage or gathering"—giving the

words their ordinary meaning—sweeps broadly enough to include the meetings proposed here.[2] The Comptroller General's 1935 opinions noted above, decided under the original language, are consistent with this conclusion, as is his 1979 opinion regarding mine safety training, and others. We need not decide that every encounter involving two or more people would constitute a "convention[] or other form of assemblage or gathering" to conclude that the ITA's proposed meetings, which would involve larger representative groups, would fall within the plain terms of the original resolution.

You also suggest that a 1993 decision by the Comptroller General supports the argument that the proposed ITA program does not involve a "meeting" for purposes of section 1345. In that opinion, the Comptroller General concluded that section 1345 did not prohibit the Department of Defense ("DOD") from paying the travel expenses of private recruiters to attend an overseas job fair for government teachers who were being laid off by DOD. The Comptroller General concluded that job fairs and one-on-one interviews with teachers were not "the type of 'meeting' the statute was intended to reach." *Use of Appropriated Funds to Pay for Recruiters to Attend Department of Defense Dependent Schools Job Fairs*, 72 Comp. Gen. 229, 230–31 (1993). Relying on the statute's legislative history, the Comptroller General explained that "the principal focus of section 1345 . . . was on conventions or other forms of assemblages or gatherings that various private organizations were seeking to hold at government expense." *Id*. at 231. The DOD job fair was different. "Provided DOD determines that the contemplated payments are necessary to accomplish the purpose of the appropriation to be charged," the Comptroller General concluded, section 1345 permits DOD to pay the travel expenses of private parties who would "provide a direct benefit to the government." *Id*.

In our view, the 1993 Comptroller General opinion does not support the expenditures proposed here. Unlike the group encounter involved in the proposed ITA program and the group encounters involved in earlier Comptroller General opinions, the DOD job fair involved individual encounters. The ultimate goal was for individual recruiters to interview and hire individual teachers. An opinion concluding that a series of one-on-one encounters is not a "meeting" does not

---

[2] *See Funk & Wagnall's New Standard Dictionary of the English Language* 572 (1946) ("convention" is "[a] formal or stated gathering of persons for some specific purpose; especially a meeting for discussion or concerted action of delegates or representatives"); *id*. at 170 ("assemblage" is "[t]he act of assembling, or the state of being assembled; association" or "[a] collection of persons or things assembled or associated"); *id*. at 1013 ("gathering" is "[t]hat which is gathered or brought together"); *Webster's New Int'l Dictionary of the English Language* 582 (2d ed. 1944) ("convention" is "[a] coming together or meeting" or "[a] body or assembly of persons met for some common purpose; esp., a formal and special or occasional assembly of delegates, representatives, members of an estate or party, or the like, met to accomplish some specific civil, social, political, ecclesiastical, or other important object"); *id*. at 165 ("assemblage" is the "[a]ct of assembling; state of being assembled" or "[a] collection of individuals, or of particular things; an aggregation; as, a political assemblage"); *id*. at 1038 ("gathering" is "[s]omething gathered; as . . . [a] crowd; assembly; congregation").

advance the argument that a series of group encounters does not constitute a meeting.

More importantly, however, the Comptroller General's reasoning in that opinion rests on a questionable and discredited premise—that the floor statements of a few members of Congress can alter the unambiguous text of a statute voted upon by the whole Congress. *See HUD v. Rucker*, 535 U.S. 125, 132 (2002) ("reference to legislative history is inappropriate when the text of the statute is unambiguous"). Statements in section 1345's legislative history variously suggest that the purpose of the law was to withhold travel expenses from "national organizations," 79 Cong. Rec. 709 (1935), "organizations of any kind," *id*. at 710, groups that travel to Washington "for the purpose of presenting propaganda for their pet projects before committees of Congress or departments of the Government," *id*., and "communistic veteran organizations," *id*. at 711. But the statute's text is not so limited, and we may not stray from that unambiguous text on the basis of statements made by individual members of Congress.

The very brief debate on the original measure in the Senate illustrates the danger. As you observe in your letter, Senator Byrnes explained that section 1345's purpose was to prevent government funding of "conventions." *Id*. at 1109 (section 1345 "is simply a declaration of policy of the Congress that no funds of any lump-sum appropriation should be used to pay the expenses of delegates to any convention in the District of Columbia"). In the next breath, when asked whether the law "relates to the District of Columbia alone," Senator Byrnes asserted his belief that it, indeed, related to the District of Columbia alone. *Id*. That, however, is not what the text of the law says. We cannot rely on a single senator's comments to show that the law applies to conventions alone—when the law as originally framed referred to "conventions and other forms of assemblage or gathering" (and, later, "meetings")—any more than we can conclude that the law only applies to meetings held in the District of Columbia—when the law referred to the "District of Columbia or elsewhere." The best indicator of statutory meaning is the statutory text, which in this case broadly prohibits using general appropriations to pay the travel expenses of a private person for a meeting. *See Conventions and Gatherings*, 14 Comp. Gen. at 640 (rejecting reliance on section 1345's legislative history because "[t]here seems very little if any room for doubt as to the reasonable meaning and legal effect of [the statute's] language").[3]

---

[3] The 1993 Comptroller General opinion discussed in your letter may reach the correct conclusion, but for the wrong reason. The better view is that the job fair does constitute a "meeting," "assemblage," or "gathering." Were an agency to pay the travel expenses of private recruiters to attend a private job fair, no one could doubt that it would contravene the plain language and purpose of section 1345. It would, in short, constitute a meeting. What distinguishes the DOD job fair, as the Comptroller General opinion suggests, was that "the recruiters provide[d] a direct benefit to the government," by hiring teachers and saving the government the cost of laying them off (early retirement incentives and general administrative costs). This "direct benefit" to the Government may have qualified the recruiters to receive travel expenses under a limited but well-recognized exception to section 1345—the "invitational travel" statute, 5 U.S.C. § 5703 (2000), which allows the government to pay the travel expenses of certain individuals who provide a direct service to the government.

Also unavailing are the other grounds cited in your letter for distinguishing the proposed ITA program from a "meeting." That the program does not involve an application from an outside organization, does not involve a general conference of interest to a broad spectrum of people, and is not open to anyone who pays a registration fee does not change the result. By its terms, the statute is not limited to meetings for which outside organizations request funds, in which a broad spectrum of people show interest, or that are open to any person who wishes to register. Moreover, while the program is clearly an important one, section 1345 does not contain an exception based on the importance of the program. To the contrary, in broad terms that leave little room for interpretation, the statute directs federal entities not to pay a private party's travel expenses for a meeting, "[e]xcept as specifically provided by law." 31 U.S.C. § 1345.

## III.

Because the proposed ITA program would qualify as a "meeting" within the meaning of section 1345, ITA may not pay the attendees' travel expenses unless Congress has "specifically provided by law" for the payment of private individuals' travel expenses to such a meeting. You have not identified any statute that would provide such authority.[4]

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] As general authority for the program, your letter cites 22 U.S.C. § 2351(b) (2000), which authorizes the President to "make arrangements to find, and draw the attention of private enterprise to, opportunities for investment and development in less-developed friendly countries and areas." You do not contend, however, that section 2351 speaks with sufficient specificity to satisfy section 1345. One statutory authority that may have possible relevance is 5 U.S.C. § 5703, the "invitational travel" statute, which provides that

> [an] employee serving intermittently in the Government service as an expert or consultant and paid on a daily when-actually-employed basis, or serving without pay or at $1 a year, may be allowed travel or transportation expenses . . . while away from his home or regular place of business and at the place of employment or service.

As specifically used in section 5703, the term "employee" means "an individual employed in or under an agency including an individual employed intermittently in the Government service as an expert or consultant . . . and an individual serving without pay." *Id*. § 5701(2) (emphasis added). The law views such individuals "as temporary employees or 'quasi employees' during the period of their service to the government." 1984 Vehicles Memorandum at 6. This authority is strictly limited to circumstances where the individual is "legitimately performing a direct service for the Government." *Id*. at 7 (emphasis added; internal quotation marks omitted); *see* 1 General Accounting Office, *Principles of Federal Appropriations Law* at 4-47 to 4-50 (3d ed. 2004). We are not in a position to judge whether any benefits to ITA from the fellowship program might satisfy the requirements of section 5703 for the payment of some or all of the fellows' travel expenses. That is a determination best made by your Department's fiscal officers, based on all of the facts and circumstances of the proposed program.