OPINION OF THE COURT
Gary F. Marton, J.
Petitioner predicated this holdover proceeding upon the allegation that there was drug-related criminal activity at respon *389 dent Wakefield’s apartment by a guest or other person under her control. After considering the testimony and the other evidence at the trial herein, the court grants petitioner a judgment of possession. The warrant shall issue forthwith but without prejudice to any application for relief under RPAPL 753.
The court finds that petitioner owns the building in which the premises is located, that petitioner is the landlord and Wake-field the tenant pursuant to a written lease, that the building is registered as a multiple dwelling with the City of New York’s Department of Housing Preservation and Development, and that a predicate notice to terminate, a notice of petition, and a petition were duly served.
The court finds as well that the premises are subject to the section 8 Housing Assistance Payments Program for Substantial Rehabilitation (24 CFR part 881), to Housing Act § 221 (12 USC § 17151), to regulations of the Department of Housing and Urban Development of the United States of America, and to the Anti-Drug Abuse Act of 1988, as amended (42 USC § 1437d [Z] [6]). The lease between petitioner and respondent provides in pertinent part at paragraph 23 (b) that “any drug-related criminal activity” at the premises by “a guest or other person under the tenant’s control” is a ground for terminating the lease.
Police Officer Salmieri testified that at about 6:00 a.m. on May 28, 2003 he and other police officers executed a “no knock” search warrant at the premises. Two adults were there: Wake-field and a Mr. Barr Elliot. The police found 10 “twisties” of crack cocaine in a woman’s blue purse and 2 “twisties” of crack cocaine in the refrigerator. Salmieri testified to the effect that the packaging of the crack cocaine in “twisties” and the number of “twisties” and their location in a purse indicated that they were being held for distribution and not for personal consumption. The officers also found 80 rounds of .40 caliber ammunition in a bag in a closet. During Salmieri’s rebuttal testimony, the court received into evidence two items of correspondence addressed to Elliot at the premises.
The police arrested Elliot and Wakefield. Elliot was prosecuted and pleaded guilty to the crime of attempted possession of a controlled substance. Wakefield was prosecuted as well, but the record of her criminal case was sealed and thus her arrest is of no consequence here.
The court finds that Salmieri’s testimony was credible and that petitioner proved that there was drug-related criminal *390 activity at the premises. The court holds that petitioner proved a prima facie case.
Wakefield testified that she did not know anything about the drugs or the bullets, and that Elliot did not live at the premises and was not a regular visitor there. She argued that there was no evidence that she was involved in any illegal activities, and that the evidence did not warrant an inference either that she knew or that she acquiesced in any illegal activity.
Wakefield contended that petitioner had to prove respondent’s knowledge of, or her acquiescence in, the illegal activity at the premises, and that, inasmuch as petitioner had not done that, petitioner had not proved a prima facie case; alternatively, Wake-field asserted that her alleged lack of knowledge of the drugs and the bullets constituted a cognizable defense to this proceeding. In support, she cited 88-09 Realty v Hill (190 Misc 2d 286 [App Term, 2d Dept 2001], affd 305 AD2d 409 [2d Dept 2003]); Kings County Dist. Attorney’s Off. v Freshley (160 Misc 2d 302 [Civ Ct, Kings County 1993]); and 1895 Grand Concourse Assoc, v Ramos (179 Misc 2d 508 [Civ Ct, Bronx County 1998]).
However, these decisions predate the ruling in Department of Hous. & Urban Dev. v Rucker (535 US 125 [2002]). That case concerned four public housing tenants of the Oakland (California) Housing Authority (OHA). OHA began state court eviction proceedings alleging violations of a clause in their leases which provided that drug-related activity of household members and guests at the premises would be grounds for eviction regardless of whether the tenant of record knew or should have known about the activity. The tenants then sued in federal court to enjoin OHA from prosecuting the eviction proceeding. They contended, among other things, that the clause was not required by the Anti-Drug Abuse Act or, alternatively, that if the clause was required, it was unconstitutional to the extent that it authorized the eviction of a tenant who did not know of and had no reason to know of the drug-related criminal activity.
The Court ruled to the contrary. Rucker held that “42 U.S.C. § 1437d(l)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity.” (At 130 [emphasis supplied].) The Court also upheld the constitutionality of the statute and the legal sufficiency of the leases.
Paragraph 23 (b) (3) of the lease at issue tracks 42 USC § 1437d (l) (6) and is substantially similar to the lease clause at *391 issue in Rucker. This court holds that Wakefield is bound by her lease, that under paragraph 23 (b) (3) her tenancy is subject to what Rucker characterized (at 134) as a “no-fault” standard, and that her defense — to wit, that she did not know of the drug-related activity and did not have reason to know of it — is not cognizable here.
The court finds as well that Wakefield’s testimony was not credible and that she did not make out the defense that she sought to raise. She testified that she knew Elliot only as someone from the neighborhood and that he had been in her apartment only three times that year. She stated that a few days before May 28, 2003 she had acquired some heavy and bulky pieces of furniture, that these were too cumbersome for her to move around the apartment by herself, and that she had invited Elliot to come to the premises at 11:00 p.m. on May 27, 2003 to help her rearrange the furniture. She averred that he came at the appointed hour, that they moved the furniture around, that at about 3:00 a.m. on May 28, 2003 she went to bed while Elliot was still in the apartment, and that she remained asleep until the police executed the “no knock” warrant. Thus, if Wake-field’s testimony is to be credited, Elliot’s presence at the premises when the warrant was executed at 6:00 a.m. was no more than a calamitous — for respondents — coincidence.
As for the bag of bullets, Wakefield testified that it was neither hers nor Elliot’s, but that it belonged to a casual acquaintance who had at one time asked her for permission to leave the bag in her apartment for a short while but who had not returned to retrieve the bag. Wakefield testified that she did not ask about the bag’s contents, had not looked at any time inside the bag, and had never made any effort to determine the nature of its contents. Wakefield also testified that she did not have a blue purse.
In particular, the court finds unbelievable Wakefield’s testimony, on the one hand, that Elliot was no more than a casual acquaintance, and, on the other hand, that she invited Elliot to come to her apartment to move furniture around at 11:00 p.m., and that at 3:00 a.m. she went to bed without telling the acquaintance that it was time for him to depart. The court infers that Elliot was more than a casual acquaintance and that he was present in the apartment rather more often than three times per year. The court finds that the correspondence addressed to Elliot at the premises confirms this inference. The court does not believe Wakefield’s testimony that she did not *392 know about the “twisties” in the refrigerator and the purse, and the court credits Salmieri’s testimony that the packaging of the crack cocaine in “twisties” and the location of 10 “twisties” in a purse indicates that they were intended not for personal use but for distribution.[1] As for the bag of bullets, the court finds that Wakefield knew or should have known its contents.
On the basis of Salmieri’s testimony, Elliot’s plea to the crime of attempted possession of a controlled substance, Wakefield’s false testimony, and the other evidence here, the court finds that there was drug-related criminal activity at the premises. The court finds that Elliot was Wakefield’s guest; he was not an intruder or a neighbor who dropped in uninvited. Instead, he was her invitee.
Inasmuch as petitioner proved a prima facie case and respondent did not prove a defense,[2] the court grants the relief set out in the first paragraph herein.[3]

. The distinction between distribution and use may be of no consequence here because each suffices as a ground for eviction under the governing statute. 42 USC § 1437d (/) states that “the term ‘drug-related criminal activity’ means the . . . distribution, use, or possession with intent to . . . distribute, or use of a controlled substance . . . .”

. Wakefield also urged that an eviction ending her four-year tenancy would be too harsh a result. However, “there is an obvious reason why Congress would have permitted . . . no-fault evictions: Regardless of knowledge, a tenant who ‘cannot control drug crime, or other criminal activities by a household member which threaten health or safety of other residents, is a threat to other residents and the project.’ 56 Fed. Reg., at 51567. With drugs leading to ‘murders, muggings, and other forms of violence against tenants,’ and to the ‘deterioration of the physical environment that requires substantial governmental expenditures,’ 42 U.S.C. § 11901(4) (1994 ed., Supp. V), it was reasonable for Congress to permit no-fault evictions in order to ‘provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs,’ § 11901(1) (1994 ed.).” (Rucker at 134; efi, ARJS Realty Corp. v Perez, 2003 NY Slip Op 51220DJ] [Civ Ct, NY County, 2003].) “In any event, all residents of public housing have a right to live in a safe, drug-free environment, which right is not diminished by the length of petitioner’s tenancy, or her claim of blind ignorance.” (Matter of Walker v Franco, 275 AD2d 627, 628 [1st Dept 2000].)

. Only Wakefield appeared herein. Thus, the judgment against the other respondents is after inquest.