Fain, Judge,
dissenting.
{¶ 31} Although the issue is close, I would affirm the judgment of the trial court.
{¶ 32} To begin with, I conclude that Section 1437d, Title 42, U.S.Code, is not intended to displace state law governing the relations between landlords and tenants.
{¶ 33} The United States Supreme Court held as follows in Dept. of Hous. & Urban Dev. v. Rucker (2002), 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258:
{¶ 34} “Section 1437d(Z)(6) requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest engages in drug-related activity, regardless of whether the tenant knew, or should have known, of the drug-related activity.” Id. at 136.
*775 {¶ 35} Significantly, in rejecting due-process concerns that had troubled the Ninth Circuit Court of Appeals, the Supreme Court opined:
{¶ 36} “The en banc Court of Appeals held that HUD’s interpretation ‘raise[s] serious questions under the Due Process Clause of the Fourteenth Amendment,’ because it permits ‘tenants to be deprived of their property interest without any relationship to individual wrongdoing.’ [Citations omitted.] But both of these cases deal with the acts of government as sovereign. * * * The situation in the present cases is entirely different. The government is not attempting to criminally punish or civilly regulate respondents as members of the general populace. It is instead acting as a landlord of property that it owns, invoking a clause in a lease to which respondents have agreed and which Congress has expressly required.” (Emphasis added.) Id., 535 U.S. at 135, 122 S.Ct. at 1236, 152 L.Ed.2d 258.
{¶ 37} Consistently with this statement that in administering public housing, the federal government is acting as landlord, not as a sovereign, the very next paragraph in the opinion in Rucker continues:
{¶ 38} “The Court of Appeals sought to bolster its discussion of constitutional doubt by pointing to the fact that respondents have a property interest in their leasehold interest, citing Greene v. Lindsey, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). This is undoubtedly true, and Greene held that an effort to deprive a tenant of such a right without proper notice violated the Due Process Clause of the Fourteenth Amendment. But, in the present cases, such deprivation will occur in the state court where [the public-housing authority] brought the unlawful detainer action against respondents. There is no indication that notice has not been given by [the public-housing authority] in the past, or that it will not be given in the future. Any individual factual disputes about whether the lease provision was actually violated can, of course, be resolved in these proceedings. [Footnote omitted].” Id., 535 U.S. at 135-136, 122 S.Ct. at 1236, 152 L.Ed.2d 258.
{¶ 39} From the two paragraphs in Rucker quoted above, I conclude that Section 1437d, Title 42, U.S.Code, the statute upon which DMHA relies, is intended to govern the administration of public-housing leases by public-housing authorities, as landlords, not to displace state law governing the legal relations between landlords and tenants.
{¶ 40} Next, I conclude that the trial court properly weighed the equities and found that they weighed against the equitable remedy of eviction in this case, which work a forfeiture of Kilgore’s housing subsidy. Equity abhors a forfeiture. Manhattan Life Ins. Co. v. Smith (1886), 44 Ohio St. 156, 167, 5 N.E. 417; Stephenson v. Haines (1866), 16 Ohio St. 478, 487. When a tenant raises equitable defenses, a court must balance the equities to determine whether a forfeiture of the lease is warranted. S. Hotel Co. v. Miscott, Inc. (1975), 44 Ohio *776 App.2d 217, 221, 73 O.O.2d 235, 337 N.E.2d 660. This is especially so where, as in the case before us, the breach of the lease has been cured. Id. See also Gorsuch Homes, Inc. v. Wooten (1992), 73 Ohio App.3d 426, 597 N.E.2d 554.
{¶ 41} DMHA argues that the trial court did not weigh the equities, but instead decided, inconsistently with HUD v. Rucker, that a tenant’s lack of knowledge of her guests’ drug-related activities is an absolute defense to eviction for that reason.
{¶ 42} The magistrate’s decision would provide support for DMHA’s argument in this regard. But the trial court, in overruling DMHA’s objection to the magistrate’s decision, took a different tack:
{¶ 43} “[DMHA] claims that the Magistrate should have granted restitution because it was established that [Kilgore] was in violation of her DMHA lease.
{¶ 44} “In Response, [Kilgore] claims that restitution should not have been granted because she was not in her apartment at the time of the drug-related incident, she had no knowledge of any drug activity, and she did not act maliciously or willfully. [Kilgore] argues that the Rucker Court held that 42 USC § 1437d vests the public housing authority with the discretion not to terminate the tenancy of an innocent tenant and following Rucker, the Secretary of HUD urged public housing authorities to be guided by compassion and common sense in responding to illegal drugs and to only use eviction as a last option. (Defendant’s Appendix B and C). [Kilgore] maintains that the Dayton Municipal Court has held that a DMHA tenant, with no previous knowledge of drug-related activity of guests, was not in breach of the tenant’s DMHA lease. DMHA v. Baldwin (Dec. 15, 2005), D.M.C. No. 05CYG1338. (The Court held that Baldwin did not act maliciously or willfully, in that she had no knowledge of the criminal activity, and she had a substantial interest in her public housing subsidy and would suffer extreme hardship if evicted.)
{¶ 45} “The Court has reviewed the record, the Transcript and evidence, and the law and agrees with the Magistrate that [DMHA] should not be granted restitution. The testimony from the Transcript indicated that [Kilgore] had the guests in her apartment from the night before when they cleaned for her, she was going to take them home after her appointment because she was running late, she was at her appointment and was not in her apartment when the police discovered the guests and the drug-related activity, she did not know her guests were involved with drugs, and the guests would never be welcome back because of the drugs and items they carried into her apartment.
{¶ 46} “The Court does not find [DMHA]’s Objections well taken. While a public housing authority can evict a tenant for drug-related crimes committed by her guests, even if the tenant has no knowledge of them, eviction should be a last *777 resort. Following Rucker, the Secretary of Housing and Urban Development issued two letters advising public housing authority directors that they should consider several factors before evicting a tenant: the seriousness of the violation, the effect of eviction on household members unconnected with the violation, and the willingness of the head of household to remove those who committed the criminal activity from the lease. (Defendant’s Appendix B and C.) Following Rucker, trial courts still have the discretion to rule in favor of an innocent tenant on an eviction action. CMHA v. Harris (2006), 139 Ohio Misc.2d 96 [861 N.E.2d 179], paragraph 12.
{¶ 47} “Here, the Magistrate was presented with evidence of an innocent tenant, who did not know about and was not present during the drug-related activity or connected with it; the parties responsible for the drug activity were temporary guests not on the tenant’s lease and the tenant was willing to never have those guests in her apartment again; and [Kilgore] would suffer if she lost her public housing. The Magistrate properly denied restitution.”
{¶ 48} Although the trial court never expressly declared in its decision that it was weighing the equities, reading its decision persuades me that this was exactly what it was doing. And I conclude that the trial court did not abuse its discretion by concluding that the equities weighed in Kilgore’s favor.
{¶ 49} I would overrule DMHA’s sole assignment of error, and affirm the judgment of the trial court.