[Cite as *Cincinnati Metro. Hous. Auth. v. Patterson*, 2013-Ohio-5323.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

CINCINNATI METROPOLITAN   :   APPEAL NO. C-130161
HOUSING AUTHORITY,            TRIAL NO. 12CV-04005

    :

    Plaintiff-Appellee,   :   *O P I N I O N.*

    :

  vs.

    :

SHEILA PATTERSON,

    Defendant-Appellant.   :

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  December 6, 2013

*Sarah Emslander*, for Plaintiff-Appellee,

*Legal Aid Society of Greater Cincinnati* and *Noel Morgan*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal of an eviction from a public-housing complex. The Cincinnati Metropolitan Housing Authority ("CMHA") sought to evict Sheila Patterson because of the criminal conduct of her grandson. The trial court granted the eviction, but did so based upon a ground that was not included in either of the two eviction notices served on Ms. Patterson or in the complaint filed against her. We believe that this was error, but we uphold the judgment of eviction. We do so because the evidence introduced at trial compels the conclusion that Ms. Patterson was properly subject to eviction for the grounds stated in the two eviction notices.

I.

{¶2}    Ms. Patterson resides in a CMHA-owned public-housing complex in the Winton Terrace neighborhood of Cincinnati. CMHA sought to evict her based upon two separate incidents involving her grandson, Deaires.

{¶3}    The first event involved Deaires's arrest for the July 5, 2011 burglary of a neighbor's unit. On January 24, 2012, CMHA served Ms. Patterson a notice of lease termination, alleging that she had violated the terms of her lease because "a guest or other person under [her] control has engaged in criminal activity that threatens the health, safety, or right to the peaceful enjoyment * * * by other residents[.]"

{¶4}    The second incident occurred on March 26, 2012, during the pendency of the eviction action. This time, Deaires was stopped by police coming out of his grandmother's apartment with marijuana in his pocket. On March 29, 2012, CMHA served a second notice of eviction on Ms. Patterson, alleging that she had violated her lease because "a guest or other person under [her] control has engaged in * * * drug-related criminal activity[.]"

2

{¶5} The matter proceeded to trial on CMHA's complaint filed after the first eviction notice. At trial, Ms. Patterson did not dispute Deaires's involvement in the burglary or in the drug offense. Rather, she argued that he was not a guest or a person under her control.

{¶6} Ms. Patterson testified that Deaires visited her frequently, was welcome as a guest in her home during June and July of 2011, and that it was generally known that Deaires could be found at her residence. The July 5, 2011 burglary involved a neighbor's unit, located about 30 yards from Ms. Patterson's back door. Ms. Patterson testified that she was away from her home the weekend of the burglary, having left in the early morning of July 5 and having returned three days later. On July 11, upon learning that police suspected that Deaires was involved in the burglary, Ms. Patterson transported him to the District 5 police station. Deaires was arrested at that time and subsequently pleaded guilty.

{¶7} CMHA presented the police report from Deaires's arrest, which listed Ms. Patterson's apartment as his address. Officer Penn, the arresting officer, testified that he used Ms. Patterson's address on the report because that was the address provided by Deaires. Ms. Patterson objected to the admissibility of the arrest report and Officer Penn's testimony about Deaires's statements. The trial court overruled the objections and admitted the report into evidence. Officer Penn also testified that, on July 11, the day of Deaires's arrest, Ms. Patterson stated that Deaires was staying with her due to some issues with his mother.

{¶8} Additionally, the trial court admitted over defense counsel's objection a letter from a juvenile court employee addressed to Officer Penn. The letter stated that Deaires resided at Ms. Patterson's residence on an electronic-monitoring unit from July 3 to October 3, 2011. During his trial testimony, Officer Penn clarified that the initial

starting date was incorrect, and that Deaires had actually been placed on the monitoring unit on July 13. Rebecca Jackson, a CMHA property manager, testified that she confronted Ms. Patterson about Deaires's presence in her home, and Ms. Patterson admitted to her that Deaires had resided with her while on the monitoring unit. Ms. Patterson subsequently reached an agreement with CMHA whereby she promised that she would no longer allow Deaires to stay in her home.

{¶9} CMHA also presented evidence relating to the marijuana arrest. Officer Kemme testified that on March 26, 2012, he observed Deaires leaving Ms. Patterson's unit, searched him, and found marijuana in his pocket. At the close of its case and following Ms. Patterson's motion to dismiss, CMHA moved to amend its complaint to include the drug offense. Over Ms. Patterson's objection, the trial court denied the motion to dismiss and granted the motion to amend. The motion to amend did not include the electronic-monitoring placement as a lease violation, and neither of the eviction notices listed it as a ground for lease termination.

{¶10} Even though no one raised the electronic-monitoring placement as a basis for eviction at trial, the trial court found for CMHA on the ground that Ms. Patterson violated her lease by allowing Deaires to reside with her while he was on electronic monitoring. The trial court in its entry of decision did not address either of the grounds set forth in the two eviction notices that were served on Ms. Patterson.

{¶11} Ms. Patterson appeals and asserts that the trial court erred by basing its decision on grounds already settled between the parties and not specified in an eviction notice, admitting hearsay evidence, and allowing CMHA to amend its pleadings to include activity that occurred after the complaint had been filed. She further argues that the bases for terminating the lease were not established by a preponderance of the admissible evidence.

4

II.

{¶12}    The United States Supreme Court reviewed the federal law governing public housing tenancies in *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002).  The issue in that case was whether a provision of the Anti-Drug Abuse Act of 1988, codified at 42 U.S.C. 1437d(l)(6), could constitutionally authorize the eviction of innocent tenants for the drug-related activity of their household members or guests.  The court held that section 1437d(l)(6) "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." *Id.* at 130.

{¶13}    Tenants are, therefore, strictly liable for the prohibited conduct of their household members and guests.  In so holding, the court explained that even an innocent tenant "is a threat to other residents and the project" if that tenant cannot control the criminal and drug-related activity of household members and guests. *Id.* at 134.  Although *Rucker* addressed only the "drug-related activity" portion of the statute, its holding applies equally to criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants. *See Portage Metro. Hous. Auth. v. Brumley*, 11th Dist. Portage No. 2008-P-0019, 2008-Ohio-5534, ¶ 85.

{¶14}    While section 1437d(l)(6) does not mandate the eviction of a tenant under those circumstances, it entrusts that decision to the local public housing authorities, because they are in the best position to consider the seriousness of the offense, the duration and impact of the problem on the housing community, and the

extent to which the tenant has taken reasonable steps to mitigate the activity. *Rucker* at 134.

{¶15} The applicable provision in Ms. Patterson's lease provides that the following is an obligation of the tenant:

> Must assure that * * * any member of the household, a guest, or another person under Tenant's control, shall not engage in (a) any criminal activity that threatens the health, safety, or right to peaceful enjoyment of CMHA's public housing premises by other residents, representatives of CMHA or persons residing in the immediate vicinity of the premises, or (b) any drug-related criminal activity on or off such premises[.]

The lease states that any violation of the above terms is grounds for termination, and it explicitly grants CMHA the deference to decide whether to evict or pursue an alternative course of action, such as prohibiting the tenant from allowing the troublesome guest to visit the unit.

{¶16} The United States Department of Housing and Urban Development ("HUD") has set forth regulations administering the requirements of section 1437d(l)(6). *See* 24 C.F.R. 966.4. The HUD regulations provide that a guest is "a person temporarily staying in the unit with the consent of a tenant[.]" 24 C.F.R. 5.100. A person under the tenant's control is defined as someone who "is, or was at the time of the activity in question, on the premises * * * because of an invitation from the tenant[.]" *Id.* "Premises" includes not only the building, complex, or development in which the dwelling unit is located, but also common areas and grounds. *Id.*

III.A.

{¶17}   In her first and second assignments of error, Ms. Patterson takes aim at the trial court's reliance on Deaires's presence in the home on a monitoring unit as the basis of the eviction.  Ms. Patterson asserts, and CMHA concedes, that due process requires a federally-funded landlord to pursue an eviction only on the grounds listed in the termination notice.  This must be so "to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence."  *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 12-13, 492 N.E.2d 841 (8th Dist.1985), quoting *Escalera* v. *New York City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir.1970).  Because neither eviction notice contained an allegation about the electronic-monitoring situation, the trial court erred by evicting Ms. Patterson on that ground.  We, therefore, sustain the first and second assignments of error.

{¶18}   Although the trial court based its judgment on an improper ground, it does not follow that the judgment must be reversed.  "A reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof."  *State v. Clements*, 1st Dist. Hamilton No. C-060837, 2007-Ohio-4461, ¶ 5, citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990), and *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944).  We must, therefore, look to the record to determine whether there is evidence supporting the trial court's judgment for the reasons listed in the eviction notices—namely, that Deaires was a guest or was otherwise under Ms. Patterson's control at the time of his July 5, 2011 or March 26, 2012 offenses.

III.B.

{¶19}   In her third assignment of error, Ms. Patterson contends that the trial court erred in admitting hearsay evidence pertaining to the July 5, 2011 burglary, and

that absent the inadmissible statements, the evidence is insufficient to support a finding that Deaires was on the premises at her invitation on the night of July 5, 2011. Specifically, Ms. Patterson contends that the trial court erred by allowing admission of the letter from the electronic-monitoring supervisor and by allowing Officer Penn to testify about statements Deaires made on the night of his arrest.

{¶20} The letter from the electronic-monitoring supervisor is hearsay. It is an out-of-court statement offered to prove the truth of the matter asserted. It is not a business record because it was produced specifically for the purposes of litigation. *See* Evid.R. 803(6). The letter should not have been admitted at trial.

{¶21} Officer Penn testified that when he arrested Deaires, Deaires had replied "4822 Winneste" (his grandmother's address) when asked for his address. This statement was also inadmissible hearsay. *See* Evid.R. 801(C). Officer Penn should not have been permitted to testify about it at trial, and the statement should not have been admitted as part of Officer Penn's police report.

{¶22} Although the trial court erred in admitting the above statements, we conclude that their admission was harmless because they were cumulative of other evidence in the record. Ms. Jackson testified that Ms. Patterson admitted to her that Deaires had resided with her while on the electronic-monitoring unit. And Officer Penn testified about Ms. Patterson's July 11 statement that Deaires had been staying with her due to problems with his mother.

{¶23} After reviewing the record, we find that there is sufficient admissible evidence that Ms. Patterson breached her lease based on the allegations in the January 24 notice to support the trial court's judgment. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997). Although Ms. Patterson testified that she was away from home

on the night of the July 5 offense, she also testified that Deaires was welcome as a guest in June and July of 2011, and that if someone was looking for Deaires, people generally knew to look for him at her unit. Officer Penn testified that Ms. Patterson told him that Deaires had been staying with her due to problems with his mother. Because this evidence is sufficient to support the trial court's judgment on the ground stated in the first eviction notice, we overrule the third assignment of error.

III.C.

{¶24} In her fourth assignment of error, Ms. Patterson contends that the trial court abused its discretion by allowing CMHA to amend its pleadings under Civ.R. 15(A) to include the March 26 drug incident. Specifically, Ms. Patterson argues that the proper vehicle for the addition was a supplemental pleading under Civ.R. 15(E), since the activity in question occurred after the filing of the original complaint. Ms. Patterson further contends that, even if the trial court did not err by permitting the amendment, CMHA did not present evidence sufficient to establish that Deaires was on the premises at her invitation on March 26.

{¶25} Under Civ.R. 15(A), unless certain time restrictions have been met, "a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires." A supplemental pleading is permitted under Civ.R. 15(E), which provides: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." We note that "the character of a pleading is determined by the averments it contains and not by the name given to it." *In re D.D.D.*, 7th Dist. Jefferson No. 12 JE 7, 2012-Ohio-5254,

9

¶ 20, citing *Cincinnati v. Cameron*, 33 Ohio St. 336 (1878), paragraph one of the syllabus.

{¶26} While we agree that CMHA might have better styled its motion under Civ.R. 15(E) because it concerns events that occurred after CMHA filed its complaint, we find no prejudice to Ms. Patterson from any error in the form or timing of the motion. The supplement did not state a new cause of action. Rather, it contained new facts in support of the original action. Ms. Patterson was given notice of CMHA's intent to rely on the March 29 notice in its pretrial statement, she testified and conducted cross-examination on that issue, and the discretion granted to the trial court is similar under both provisions. We find no abuse of discretion in the court's decision to grant CMHA's motion to amend.

{¶27} Finally, our review of the record persuades us that there is sufficient evidence to support the trial court's judgment on the basis that Deaires was on the premises at Ms. Patterson's invitation on March 26, 2012, when he was found with marijuana. Officer Kemme's testimony was uncontroverted that, immediately prior to finding marijuana in his possession, he "observed Deaires Patterson come out of the front door of 4822 Winneste Avenue where Ms. Patterson lives." We overrule the fourth assignment of error.

IV.

{¶28} Pursuant to federal law, CMHA employs a zero-tolerance policy in an attempt to rid its communities of criminal and drug-related activity. This policy may sometimes produce harsh results, but as the *Rucker* Court observed, "[s]trict liability maximizes deterrence and eases enforcement difficulties." *Rucker*, 535 U.S. 125, 134, 122 S.Ct. 1230, 152 L.Ed.2d 258. In applying the law to the facts before us, we are mindful of the need to protect not only the rights of the defendant-appellant, but also the

10

rights of other residents to live in a community that is as free as reasonably possible from drugs and crime.

{¶29}    In this case, the overwhelming evidence introduced at trial was that Ms. Patterson permitted Deaires to be at the premises, and that on two occasions Deaires engaged in criminal conduct in the immediate vicinity of her premises that constituted a violation of her lease.  Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.


**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.