**HOUSING AUTHORITY OF COVINGTON, Appellant,**

v.

**Clarissa TURNER, Appellee.**

**No. 2007–CA–002562–DG.**

Court of Appeals of Kentucky.

May 29, 2009.

Rehearing Denied July 23, 2009.

Stephen T. McMurtry (argued), Ft. Mitchell, KY, for appellant.

Acena J. Smith (argued), Covington, KY, for appellee.

Before KELLER, MOORE and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

The Housing Authority of Covington (the Authority) is a public body established pursuant to KRS 80.020 for the purpose of providing housing assistance to needy people within the City of Covington. It is a participant in the housing program provided by the federal government and accepts federal funds to finance low-cost housing. Clarissa Turner is a resident of the Jacob Price Development operated by the Authority and the recipient of assisted housing. The issue presented is whether the tenant has the right to remedy the breach of the lease pursuant to KRS 383.660(1), contained within the Uniform Residential Landlord and Tenant Act (URLTA), or whether KRS 383.660(1) is preempted by federal law. Following a hearing, the district court found that Turner remedied the breach and held that the doctrine of preemption did not preclude the application of Turner's right to remedy. The circuit court affirmed, and this court accepted discretionary review.

Turner received a fourteen-day notice of eviction after crack cocaine, powdered cocaine, and drug paraphernalia were found in a room in Turner's apartment where her nephew, Dazzamon Jones, who visited the apartment every other weekend, kept his belongings. On August 21, 2007, the Authority filed a forcible detainer action wherein it alleged that Turner violated the terms of her lease agreement when Jones engaged in drug-related criminal activity. At the time the apartment was searched, Turner was at work. She testified that she had no knowledge of drugs in her apartment and did not learn that Jones was arrested until she received the eviction notice. She testified that she informed Jones to stay away from her apartment and that Jones had not returned.

At the close of the testimony, the Authority argued that 42 U.S.C. § 1437d($l$)(6) placed an obligation on Turner to assure that guests not engage in drug-related criminal activity on the leased premises and that the statute pre-empted the URLTA. The district court disagreed and dismissed the action holding that pursuant to KRS 383.660 of the URLTA and the terms of the lease, Turner sufficiently remedied the drug-related criminal activity, engaged in by Jones, by barring him

from her apartment. The circuit court affirmed.

The lease executed between the Authority and Turner contains two provisions pertinent to this appeal. The first mirrors the language of 42 U.S.C. § 1437d(*l*)(6) which states: "Each public housing agency shall utilize leases which ... provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of the tenancy...."

The second provision imperative to our analysis is paragraph twenty-one. It states:

> "Evictions for Criminal Activity or Drug Related Criminal Activity will be governed by URLTA as adopted by the State of Kentucky and the City of Covington and will not be governed by the grievance procedure of the authority."

KRS 383.660(1) provides a tenant the opportunity to "remedy" a breach of the lease. The Authority argues that the federal and state statutes conflict and, therefore, the state statute is preempted by the federal statute. We disagree.

42 U.S.C. § 1437d(*l*)(6) was enacted as part of the Anti–Drug Abuse Act of 1988 § 5122, 102 Stat. 4301, 42 U.S.C. § 11901(3) (1994 ed.). The United States Supreme Court first considered the statute in 2002, when it rendered its decision in *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 130, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002). *Rucker* is the pivotal case when applying the federal statute in local housing authority eviction proceedings and, therefore, we discuss the Court's opinion in detail.

In *Rucker*, public housing tenants brought an action against the housing authorities alleging that the federal statute did not permit evictions based on drug-related criminal activity engaged in by a tenant's household members, guests or other persons under their control absent the tenant's knowledge of such activity. The Supreme Court held that 42 U.S.C. 1437d(*l*)(6) unambiguously requires lease terms that vest the local public housing authorities with power to evict tenants for the drug-related criminal activity of household members and guests whether or not the tenant knew, or should have known, about the activity. *Id.*

The pervasive need for such a "no-fault eviction" proceeding was explained by the Court:

> And, of course, there is an obvious reason why Congress would have permitted local public housing authorities to conduct no-fault evictions: Regardless of knowledge, a tenant who "cannot control drug crime, or other criminal activities by a household member which threaten health or safety of other residents, is a threat to other residents and the project." 56 Fed.Reg., at 51567. With drugs leading to "murders, muggings, and other forms of violence against tenants," and to the "deterioration of the physical environment that requires substantial government expenditures," 42 U.S.C. § 11901(4) (1994 ed., Supp. V), it was reasonable for Congress to permit no-fault evictions in order to "provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs," § 11901(1) (1994 ed.).

*Id.* at 535 U.S. 125, 134, 122 S.Ct. 1230, 1235, 152 L.Ed.2d 258 (2002). Despite the rampant drug problem within our public housing system, the Court clarified that while a lease provision is mandated that

apprises the tenant that drug-related criminal activity may result in eviction, the federal law does not mandate eviction. We quote the precise language of the Court:

> The statute does not *require* the eviction of any tenant who violated the lease provision. Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," 42 U.S.C. § 11901(2) (1994 ed. and Supp. V), "the seriousness of the offending action," 66 Fed.Reg., at 28803, and "the extent to which the leaseholder has ... taken all reasonable steps to prevent or mitigate the offending action," *ibid.*

*Id.* (emphasis original). The discretion afforded local authorities is expressly provided for in United States Department of Housing and Urban Development (HUD) regulation 24 CFR § 966.4 (2001).

The Court noted that the government is not attempting to impose a criminal punishment or regulate the tenants as members of the general populace. "It is instead acting as a landlord of property that it owns, invoking a clause in a lease to which respondents have agreed and which Congress has expressly required." *Rucker,* 535 U.S. at 135, 122 S.Ct. at 1236. Additionally, the Court emphasized that while proper notice of eviction is required, any factual disputes as to whether the lease was violated is resolved in the eviction action. *Id.* at 136, 122 S.Ct. 1230.

Immediately after the *Rucker* decision, the HUD Secretary, Mel Martinez, issued a letter to all public housing authorities where he advised that the no-fault eviction statute had been upheld, but urged all to be guided by compassion and common sense. He further stated that the decision to evict is entrusted to the local authorities and that the statute does not require eviction. In his concluding remark, he stated: "We look forward to working with you in a firm yet compassionate way of applying this new tool to benefit the residents of public housing."

■ The *Rucker* opinion and HUD's directives to local authorities leave no ambiguity that the devastating consequences of drug-related criminal activity within public housing has forced the government to take the drastic action of permitting eviction of innocent tenants who have the misfortune of inviting another onto their premises who engages in drug-related criminal activity. However, federal law does not provide for mandatory summary eviction but vests in local authorities the discretion to commence the process of eviction.

■ The Authority argues that the doctrine of preemption precludes that application of KRS 383.660. Preemption is an ancient doctrine derived from the Supremacy Clause of Article VI of the United States Constitution. *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819). Our Supreme Court has summarized it as follows:

> As a general statement, preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); when there is outright or actual conflict between federal and state law, e.g., *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); where there is implicit in federal law a barrier to state regulation, *Shaw v. Del-*

*ta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Com. ex rel. Cowan v. Telcom Directories, Inc.,* 806 S.W.2d 638, 640 (Ky.1991). While necessity demands that federal law take precedent over state laws in the instances described, intrusions into the traditional powers of the states are not favored and, therefore, there is a presumption against preemption of state statutes and regulations. *Niehoff v. Surgidev Corporation,* 950 S.W.2d 816, 821 (Ky.1997). The essential inquiry when deciding whether a statute is preempted by a federal statute or regulation is whether the state and federal law can coexist and be applied without conflict.

 In this case, we conclude there is no prohibition in the federal law against affording a public housing tenant the right to remedy the breach, no irreconcilable conflict between the statutes, and that the application of the state statute does not defeat the objectives of the federal statute. To the contrary, the Supreme Court expressly left discretion to the states and local authorities when it stated that the local authorities are in the best position to consider "the extent to which the leaseholder has ... taken all reasonable steps to prevent or mitigate the offending action[.]" *Rucker,* 535 U.S. at 134, 122 S.Ct. at 1235 (quoting 66 Fed.Reg., at 28803). Thus, the Court explicitly concludes that

the federal law does not deprive the local authorities of discretion to decide whether to evict its tenant. *Id.*

We also disagree that the right to remedy a drug-related violation of a lease defeats the purpose of the federal statute. In its well-reasoned opinion, the circuit court applied judicial common sense and concluded the right to remedy may further the objective of discouraging illegal drug use on public housing premises. We quote:

> [R]ather than the provision of an opportunity to remedy being an obstacle to the purposes and objectives of the Anti–Drug Activity law, a tenant who has been served with notice of the intent to evict has clear knowledge of the provision, and having been given the opportunity to remedy may be among the most likely of tenants to prevent the situation from recurring, thereby furthering the purposes of and objectives of the law.

We agree with the circuit court's reasoning and further comment that the United States Supreme Court and HUD have urged that the right to evict innocent tenants who unknowingly invite guests who participate in illegal drug-related activity onto the premises be exercised with compassion. Conferring the opportunity to remedy the violation is, in this court's view, in conformity with the cautionary remarks of the United States Supreme Court and HUD. *See also Cuyahoga Metropolitan Housing Authority v. Harris,* 139 Ohio Misc.2d 96, 99, 861 N.E.2d 179, 181 (2006) (the court held that *Rucker* "does not provide a basis for preempting or limiting this court's equity powers.").

 In this case, the Authority exercised its discretion and gave Turner the rights conferred by the URLTA, including KRS 383.660(1), when it incorporated the Act into the lease. The provision is clear and unambiguous and leaves no doubt that

the right to remedy the breach is included within its terms. The Authority is a landlord of the property and is bound by a clause in the lease as would be any private citizen. *Rucker*, 535 U.S. at 135, 122 S.Ct. at 1236.

We do not decide whether the provisions of the URLTA and the right to remedy apply to drug-related criminal activity because the lease in question specifically states that drug-related evictions shall be governed by URLTA. While arguably the Authority had the discretion to remove the "right to remedy" provision from the lease, it chose not to do so.

The district court made a finding of fact that Turner remedied the breach of the lease when she prohibited her nephew from further entrance into her apartment. The appropriate standard of review applicable to findings of fact of a trial court is whether or not its findings of fact were clearly erroneous. CR 52.01. Turner's testimony constitutes substantial evidence to support the district court's findings and, therefore, we affirm.

The opinion and order of the Kenton Circuit Court is affirmed.

KELLER, Judge, Concurs.

MOORE, Judge, Concurs and Files Separately.

MOORE, Judge, Concurring:

I agree with the conclusion of the majority that Ms. Turner cannot be evicted but write separately because I respectfully disagree with the analysis utilized in reaching that conclusion. In my opinion there is no doubt that the federal law in this case occupies the field. Thus, it preempts any state law to the contrary. The "one-strike" policy of 42 U.S.C. § 1437d($l$)(6) does not include any provisions mandating that a tenant be allowed to cure violations of it,

which is precisely what the majority concludes that KRS 383.660(1) does.

In the seminal case on the issue, *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 136, 122 S.Ct. 1230, 1236, 152 L.Ed.2d 258 (2002), the Court held that

> "Congress has directly spoken to the precise question at issue." Section 1437d($l$)(6) requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest engages in drug-related activity, regardless of whether the tenant knew, or should have known, of the drug-related activity.

(internal citation omitted). Thus, a state statute allowing a remedy is contrary to the clear language of the federal statute.

Certainly, the Congressional intent is not to be overly harsh on tenants such as Ms. Turner, but to look out for the best interests of all residents in housing developments receiving federal funding. All tenants should be able to feel secure in their homes and live in decent and safe housing, without the fear of drug-related crimes often associated with public housing. Indeed, in the Congressional findings regarding public housing drug elimination, Congress found that:

> (1) the Federal Government has a duty to provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs;

> (2) public and other federally assisted low-income housing in many areas suffers from rampant drug-related or violent crime;

> (3) drug dealers are increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants;

(4) the increase in drug-related and violent crime not only leads to murders, muggings, and other forms of violence against tenants, but also to a deterioration of the physical environment that requires substantial government expenditures;

(5) local law enforcement authorities often lack the resources to deal with the drug problem in public and other federally assisted low-income housing, particularly in light of the recent reductions in Federal aid to cities;

(6) the Federal Government should provide support for effective safety and security measures to combat drug-related and violent crime, primarily in and around public housing projects with severe crime problems;

(7) closer cooperation should be encouraged between public and assisted housing managers, local law enforcement agencies, and residents in developing and implementing anti-crime programs; and

(8) anti-crime strategies should be improved through the expansion of community-oriented policing initiatives.

42 U.S.C. § 11901.

Consequently, the "one-strike" policy was implemented as a result of these findings. Accordingly, Congress sought to occupy the field in the area of drug-related crimes in public housing in an effort to eradicate it. Had Congress intended to mandate remedies to this policy, it would have so said. Thus, a state statute allowing remedies beyond any that may be granted by Congress is contrary to clear congressional language and intent. Thus, I conclude that KRS 383.660(1) is preempted by 42 U.S.C. § 1437d(*l*)(6).

Notwithstanding this conclusion, I agree that Ms. Turner should not be evicted in the case at hand. In *Rucker*, 535 U.S. at 133–34, 122 S.Ct. at 1235, the Court also held that 42 U.S.C. § 1437d(*l*)(6)

> does not *require* the eviction of any tenant who violated the lease provision. Instead it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," [;] "the seriousness of the offending action,"[;] and "the extent to which the leaseholder has ... taken all reasonable steps to prevent or mitigate the offending action[.]"

(Internal citations omitted).

While much discretion rests with the local Housing Authority, *Rucker* does require some thresholds to be met or facts to be taken into consideration for the eviction of a tenant under 42 U.S.C. § 1437d(*l*)(6). In other words, discretion must be exercised, rather than a blind application of the law because 42 U.S.C. § 1437d(*l*)(6) does not *require* evictions.

A review of the record reveals no evidence showing that the Jacob Price Development "suffers from 'rampant drug-related or violent crime.'" While the Housing Authority may believe this to be so or even have a historical view or police reports supporting this, this is not an issue which is proper for judicial notice. Moreover, nothing was shown that the Housing Authority weighed anything in its decision to evict Ms. Turner. The Housing Authority should have put forth some evidence supporting this. However, the Housing Authority pointed to nothing other than the language of 42 U.S.C. § 1437d(*l*)(6) to support its eviction proceedings.

I conclude, upon a reading of *Rucker*, that a reliance on 42 U.S.C. § 1437d(*l*)(6) alone is insufficient where the local housing authority has not made a showing of evidence that it weighed the policy consid-

erations behind evictions in drug-related cases in public housing. This may include, *inter alia,* a showing of police records evidencing a rampant drug problem, complaints by neighbors of drug problems in the development, etc. Indeed, this view is in accord with the considerations in the *Rucker* opinion and the resultant directive from the United States Department of Housing and Urban Development, dated April 16, 2002. In that directive, then Secretary Mel Martinez wrote that

> [b]y addressing activities that threaten the health, safety, or right to peaceful enjoyment of the premises by other tenants, the household responsibility clause provides public housing authorities a strong tool to use in dealing with the problem of illegal drugs. But as a tool, it should be applied responsibility. Applying it rigidly could generate more harm than good.

The Housing Authority having relied solely on 42 U.S.C. § 1437d(*l*)(6), without exercising its discretion by taking into account and presenting proof of having considered the factors outlined in *Rucker,* has failed to show that the policy considerations behind 42 U.S.C. § 1437d(*l*)(6) have been met for eviction in the case at hand. Accordingly, I would affirm, but on grounds other than the majority or the circuit court reached.