MILWAUKEE CITY HOUSING AUTHORITY,
Plaintiff-Respondent,†

v.

Felton COBB,
Defendant-Appellant.

Court of Appeals

*No. 2013AP2207. Submitted on briefs May 6, 2014.
—Decided May 28, 2014.*

2014 WI App 70

(Also reported in 849 N.W.2d 920.)

† Petition for Review granted September 18, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *April A.G. Hartman* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *John J. Heinen*, assistant city attorney.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Felton Cobb appeals a judgment and restitution order evicting him from an apartment he rented from the Housing Authority of the City of Milwaukee. The Housing Authority claimed that Cobb violated his lease by using marijuana. One of the Housing Authority's security officers testified at the eviction evidentiary hearing that he smelled marijuana coming from Cobb's apartment during the security

officer's routine patrol of the building.[1] Although Cobb denied using marijuana that day, both to the security officer and during Cobb's testimony before the circuit court, the circuit court found the security officer more credible. Thus, the circuit court determined in its oral ruling that there was a "preponderance of evidence indicating that there's drug activity." As explained below, the circuit court lacked competency over the Housing Authority's eviction action. Accordingly, we reverse and remand to the circuit court with directions that it vacate the eviction judgment and the restitution order. *See* Wis. Stat. § 808.09.[2]

---

[1] The security officer also cited Cobb for not letting the security officer into his apartment when the security officer asked to go in after Cobb denied using marijuana. The Housing Authority agreed at the evidentiary hearing, however, that it was basing its eviction action only on Cobb's purported breach of the lease, as set out in the notice to Cobb terminating his tenancy, "for using illegal drugs inside of your unit." Further, as Cobb pointed out during the evidentiary hearing, the lease, as material, requires "notice in writing to the resident at least two (2) days prior to the entry," which was not given.

[2] Cobb's brief on appeal asserts that he also appeals the circuit court's "denial of his Motion to Reconsider." The motion contended that the circuit court applied the wrong burden of proof ("preponderance of the evidence" as opposed to "clear and convincing evidence"), even though at the evidentiary hearing, Cobb's lawyer (who also represents Cobb on this appeal) agreed with the circuit court that the proper standard of proof was "preponderance of the evidence," and asserted in Cobb's motion to dismiss the eviction action that this was the applicable burden of proof.

Although the Housing Authority does not challenge our jurisdiction over Cobb's purported appeal of the circuit court's oral denial of his motion for reconsideration, we must independently determine whether we have jurisdiction. *See Dyer v. Blackhawk Leather LLC*, 2008 WI App 128, ¶ 28, 313 Wis. 2d 803, 829, 758 N.W.2d 167, 180 ("This court always has a duty to

# I.

■

¶ 2. As noted, the circuit court evicted Cobb from his apartment in one of the Housing Authority's units. He was living there under a one-year lease. The parties agree that Cobb, who was sixty-two at the time of the

resolve, even sua sponte, the question of whether it has jurisdiction over an issue on appeal."). We conclude, for the reasons set out in the next paragraph of this footnote, that we do not. In any event, given our conclusion that the circuit court lacked competency over the eviction action, we would not have reached the burden-of-proof issue had it been preserved. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

There are two reasons why we do not have jurisdiction over Cobb's purported appeal from the circuit court's oral denial of his motion for reconsideration. First, the circuit court did not enter a written order denying Cobb's motion. *See Ramsthal Advertising Agency v. Energy Miser, Inc.*, 90 Wis. 2d 74, 75–76, 279 N.W.2d 491, 492 (Ct. App. 1979) (An oral ruling must be reduced to writing for there to be appellate jurisdiction.). Second, Cobb's notice of appeal says that he appeals from the "judgment" and the restitution order, but does not mention the order denying his motion for reconsideration. Although Wis. Stat. Rule 809.10(4) provides that, "[a]n appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon," the circuit court's oral denial of Cobb's motion for reconsideration was not made "prior" to the judgment. There is thus no appeal of the circuit court's oral denial of Cobb's motion for reconsideration, and, accordingly, no "appeal" to dismiss. *See* Wis. Stat. Rule 809.10(1)(b) ("The notice of appeal shall include all of the following . . . 2. An identification of the judgment or order from which the person filing the notice intends to appeal and the date on which it was entered.").

hearing, is disabled. The parties also agree that the Housing Authority filed this eviction action without first giving Cobb the five-day, right-to-cure notice required by Wis. Stat. § 704.17(2)(b). This subsection provides, as material:

> If a tenant under a lease for a term of one year . . . breaches any covenant or condition of the tenant's lease . . . the tenant's tenancy is terminated if the landlord gives the tenant a notice requiring the tenant to remedy the default or vacate the premises on or before a date at least 5 days after the giving of the notice, and if the tenant fails to comply with such notice. A tenant is deemed to be complying with the notice if promptly upon receipt of such notice the tenant takes reasonable steps to remedy the default and proceeds with reasonable diligence.

A landlord's failure to comply with an eviction statute's requirements deprives the circuit court of competency to enter an eviction judgment. *See Meier v. Smith,* 254 Wis. 70, 75, 35 N.W.2d 452, 455 (1948); *Hartnip v. Fields,* 247 Wis. 473, 475–476, 19 N.W.2d 878, 880 (1945); *Tower Bldg. Co. v. Andrew,* 191 Wis. 269, 270, 844, 210 N.W. 842, 844 (1926). *See also Baraboo National Bank v. Corcoran,* 243 Wis. 386, 389, 10 N.W.2d 112, 113 (1943) (recognizing that where "[a] right or privilege is reserved in the lessee under the notice required to be served" by the statute, the notice must apprise the tenant of that "right" or "privilege" to cure the alleged breach of the rental agreement).

¶ 3. The Housing Authority does not dispute this. Rather, it argues that federal law preempted the right-to-cure provision in Wis. Stat. § 704.17(2)(b). The circuit court agreed. Our review of this legal issue is *de novo. See M & I Marshall & Ilsley Bank v. Guaranty*

609

*Financial, MHC*, 2011 WI App 82, ¶ 21, 334 Wis. 2d 173, 188, 800 N.W.2d 476, 483. We disagree.

## II.

¶ 4. "Federal preemption is based on Article VI of the United States Constitution, which makes federal law 'the supreme Law of the Land.' " *Estate of Kriefall ex rel. Kriefall v. Sizzler USA Franchise, Inc.*, 2003 WI App 119, ¶ 3, 265 Wis. 2d 476, 484, 665 N.W.2d 417, 421 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) and U.S. CONST. art VI).

> There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.
>
> State law must also give way to federal law in at least two other circumstances. First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive . . . that Congress left no room for the States to supplement it" or where there is a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."
>
> Second, state laws are preempted when they conflict with federal law. This includes cases where "compliance with both federal and state regulations is a physical impossibility," and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" In preemption analysis, courts should assume that "the historic police powers of

the States" are not superseded "unless that was the clear and manifest purpose of Congress."

*Arizona v. United States*, 567 U.S. ___, ___, 132 S. Ct. 2492, 2500–2501 (2012) (internal citations, quoted sources, and parenthetical omitted; ellipses in *Arizona*). Thus:

> The question of whether federal law pre-empts state law is one of congressional intent. Federal law pre-empts state law in three situations: (1) where Congress explicitly mandates pre-emption of state law; (2) where Congress implicitly indicates an intent to occupy an entire field of regulation to the exclusion of state law; or, (3) where state law actually conflicts with federal law. The defendant bears the burden of establishing pre-emption.

*Miller Brewing Co. v. Department of Industry, Labor and Human Relations, Equal Rights Division*, 210 Wis. 2d 26, 34–35, 563 N.W.2d 460, 464 (1997) (internal citations omitted, and paragraphing altered).

¶ 5. The Housing Authority does not contend that the federal statutes on which it relies "explicitly mandate[] pre-emption of state law," as they would if the Congress had used language similar to that it used in 42 U.S.C. § 1437d(l)(7): "notwithstanding any State law."[3] We thus must see whether federal law either has occupied the "entire field" in connection with federal assistance to state public-housing authorities, or there is a conflict between federal law and Wis. Stat.

[3] 42 U.S.C. § 1437d(l) has two subsection 7's. We reference the first: "Each public housing agency shall utilize leases which . . . (7) specify that with respect to any notice of eviction or termination, notwithstanding any State law, a public housing tenant shall be informed of the opportunity, prior to any hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination."

611

§ 704.17(2)(b) so that reconciliation of § 704.17(2)(b) with federal law either "is a physical impossibility" or Congress's "manifest" objectives are stymied by enforcement of the § 704.17(2)(b)'s right-to-cure requirement. *See Arizona*, 132 S. Ct. at 2501. None of these preemption requisites are here.

¶ 6. The Housing Authority first points to 42 U.S.C. § 1437d(l)(6) in support of its argument that federal law preempts WIS. STAT. § 704.17(2)(b). 42 U.S.C. § 1437d(l)(6) reads:

Each public housing agency shall utilize leases which—

. . .

(6) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, *shall be cause for termination of tenancy.*

(Emphasis added.) No one disputes that Cobb's lease with the Housing Authority so provides. But, Section 9 of the lease also specifically says that the Housing Authority will comply with WIS. STAT. § 704.17(2)(b):

C. The [Housing Authority] may evict the resident only by bringing a court action. The [Housing Authority] *termination notice shall be given in accordance with a lease for one year per Section 704.17(2)* of the Wisconsin Statutes, except the [Housing Authority] shall give written notice of termination of the Lease as of:

. . .

2. A reasonable time commensurate with the exigencies of the situation (not to exceed 30 days) in the case of criminal activity which constitutes a threat to other Residents or employees of the [Housing Authority] of any drug-related criminal activity on or off the development grounds[.]

(Emphasis added.) Thus, Section 9.C.2 of the lease is fully consistent with 42 U.S.C. § 1437d(l)(5), which dictates that public-housing leases must "require that the public housing agency may not terminate the tenancy except *for serious or repeated violation* of the terms or conditions of the lease or for other good cause." (Emphasis added.) Further, 42 U.S.C. § 1437d(l)(4)(A) reads:

Each public housing agency shall utilize leases which—

. . . .

(4) require the public housing agency to give adequate written notice of termination of the lease which shall not be less than—

(A) a reasonable period of time, but not to exceed 30 days—

(i) if the health or safety of other tenants, public housing agency employees, or persons residing in the immediate vicinity of the premises is threatened; or

(ii) in the event of any drug-related or violent criminal activity or any felony conviction[.]

Neither § 704.17(2)(b) nor Cobb's lease with the Housing Authority conflicts with § 1437d(l)(6) because compliance with both provisions is not "a physical impossibility" and enforcement of § 704.17(2)(b)'s five-day right to cure does not stymie Congress's "manifest" objectives as evidenced by §§ 1437d(l)(4)(A) & 1437d(l)(5). *See Arizona*, 132 S. Ct. at 2501. Additionally, as we have

613

also seen, the federal law does not supplant the field; it fully recognizes that public housing is a shared federal-state endeavor. But there is more.

¶ 7. We may also consider regulations adopted by the agency to fill the interstices left by the Congress. *See Hillsborough County, Florida. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985) ("We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes."). 24 C.F.R. § 966.4(l)(5)(i)(B) requires that every "lease must provide that drug-related criminal activity engaged in on or off the premises by any tenant, member of the tenant's household or guest, and any such activity engaged in on the premises by any other person under the tenant's control, is *grounds for* the [public housing agency] to terminate tenancy." (Emphasis added.) 24 C.F.R. § 966.4(l)(5)(vii)(B) recognizes that "grounds for" does not mean "required" even though the predicate reason is proven:

> *Consideration of circumstances.* In a manner consistent with such policies, procedures and practices, the [public housing agency] may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity *and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.*

(Last set of italics added.) This is further proof that Wis. Stat. § 704.17(2)(b)'s right-to-cure provision is not pre-empted by federal law. *See Meier*, 254 Wis. at 75, 35 N.W.2d at 455.

¶ 8. *Meier* concerned a landlord who sought to evict tenants by giving a shorter notice than what Wisconsin law allowed because the landlord claimed that the then federal rent-control law permitted a sixty-day notice. *Id.*, 254 Wis. at 171–72, 74, 35 N.W.2d at 453, 454. *Meier* held that the federal law did not preempt the Wisconsin statute:

> It is clear that the provision in the federal act which requires at least sixty days' written notice as a condition precedent to maintenance of eviction proceedings against a tenant for the purpose of owner occupancy, does not conflict with the [Wisconsin provision], which further restricts the maintenance of eviction proceedings in such instances after the expiration of six months' written notice. There is nothing in the federal act which would prevent a court in which an eviction action was instituted from requiring a notice of six months or even longer. Congress intended such a result when it used the language of 'at least sixty days.' There is no repugnance or conflict so direct and positive that the two acts cannot be reconciled or stand together.

*Id.*, 254 Wis. at 75, 35 N.W.2d at 455. Nevertheless, the Housing Authority says that we should follow several out-of-state decisions that upheld federal-law-preemption arguments even though those decisions are not binding on us.

¶ 9. The main out-of-state decision on which the Housing Authority relies is *Scarborough v. Winn Residential L.L.P./Atlantic Terrace Apartments*, 890 A.2d 249 (D.C. 2006), where the tenant in a public-housing facility was evicted because she "was responsible for the presence in her apartment of a loaded 12–gauge shotgun that had been used in a fatal shooting there the previous day," *id.*, 890 A.2d at 251. The tenant con-

615

tended that the landlord did not comply with a provision of the District of Columbia Code that required the landlord to give "her a 'notice to correct the violation' within thirty days." *Ibid. Scarborough* concluded "that the requirement of a notice and opportunity to correct (or 'cure') as applied to criminal activity—such as possession of the loaded shotgun in this case—that endangers the safety or right to peaceful enjoyment of other tenants may not be imposed consistently with the federal statute and regulations governing appellant's tenancy." *Ibid.*

¶ 10. Scarborough's lease permitted its termination for " 'criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants.' " *Id.*, 890 A.2d at 252, n.1. The landlord gave Scarborough notice to vacate her apartment and did not give her "an opportunity to cure the lease violation." *Id.*, 890 A.2d at 252. *Scarborough* considered the various aspects of federal preemption that we have already discussed and concluded that under the circumstances federal law preempted the District of Columbia Code that required the thirty-day right to cure:

> The parties agree that this case does not involve express or field pre-emption, nor is compliance with both [the Code] and federal law a "physical impossibility." The question, rather, is whether application of the District's cure opportunity for criminal violations that threaten the safety or peace of other tenants would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." It is clear to us that it would.

*Id.*, 890 A.2d at 255. *Scarborough* relied on a "One-Strike Policy" in The Department of Housing and Urban Development, "Proposed Rules," 64 Fed. Reg. 40262–01 (July 23, 1999), that it said was applicable to

the matter before it. *Id.*, 890 A.2d at 257. That one-strike policy drove the *Scarborough* decision:

> The only way to make sense of the idea of "correct[ing]" criminal activity would be to require the tenant not to engage in such activity again. But, as [The Department of Housing and Urban Development] points out in the government's brief *amicus curiae,* "this interpretation quickly renders the eviction provision a virtual nullity, because the grounds for eviction-the criminal act-would be washed away by a simple promise not to commit another crime." The very ease of thwarting the landlord's right to evict for commission of such a crime would frustrate the purpose of an anticrime provision that permits eviction for "any" criminal activity threatening in the sense defined.

*Ibid.* (footnote omitted, first set of brackets by *Scarborough*). *Scarborough* also rejected the argument that a federal regulation providing that " '[a] tenant may rely on State and local law governing eviction procedures where such law provides the tenant procedural rights which are in addition to those provided by this subpart' " (except where federal preemption overrides the state or local law) permitted the District of Columbia's right to cure. *Id.*, 890 A.2d at 258 (quoted source omitted).

¶ 11. The Department of Housing and Urban Development's one-strike policy is in a pamphlet in the Record here, " 'One Strike and You're Out' Policy in Public Housing." This type of agency manual, however, is not given the same type of deference to which courts give "regulations with the force of law." *See Wos v. E.M.A. ex rel. Johnson,* 568 U.S. ___, ___, 133 S. Ct. 1391, 1402 (2013): "We have held that '[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement

guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.' " (referencing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); quoted source omitted). In any event, " 'One Strike and You're Out' Policy in Public Housing" only mentions federal preemption once— noting that proof of unlawful criminal activity by a tenant or a member of the tenant's household need not be by conviction: "[A]ny provisions in state laws that require conviction in order to evict tenants are preempted by federal law." United States Department of Housing and Urban Development, *"One Strike and You're Out" Policy in Public Housing,* p.7 § III.2. (March 1996). Additionally, the pamphlet advises public-housing authorities to *"consider* additional language specifying that the [public-housing agency] has a One Strike or 'zero tolerance' policy with respect to violations of lease terms regarding criminal activity." *Id.*, § III.1. (Emphasis added.) Here, of course, Cobb's lease with the Housing Authority not only does not have this "One Strike or 'zero tolerance' policy" clause but, as we have seen, the lease specifically binds the Housing Authority to comply with Wis. Stat. § 704.17(2)(b). Moreover, this is consistent with the manual's recognition that "State or local law governing eviction procedures may give tenants procedural rights in addition to those provided by federal law. Tenants may rely on those state or local laws so long as they have not been preempted by federal law." United States Department of Housing and Urban Development, *"One Strike and You're Out" Policy in Public Housing,* p.9 § III.7.

¶ 12. The Housing Authority asks us to follow *Scarborough* and decisions by other state courts relying on *Scarborough*. The Housing Authority also relies on *Department of Housing and Urban Development v.*

618

*Rucker*, 535 U.S. 125 (2002), for the unremarkable proposition that drug use in public housing can harm the facility and its residents. *See id.*, 535 U.S. at 130 ("42 U.S.C. § 1437d(l)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity."). *Rucker*, however, is not a preemption case and is of little help here. Significantly, though, *Rucker* recognized that 42 U.S.C. § 1437d(l) "does not *require* the eviction of any tenant who violated the lease provision. Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from 'rampant drug-related or violent crime,' 'the seriousness of the offending action,' and 'the extent to which the leaseholder has . . . taken all reasonable steps to prevent or mitigate the offending action.' " *Id.*, 535 U.S. at 133–134 (emphasis and ellipsis by *Rucker*; quoted sources omitted).

¶ 13. Cobb, on the other hand, asks that we follow *Housing Authority of Covington v. Turner*, 295 S.W.3d 123 (Ky. Ct. App. 2009), which held that a state statute giving a tenant the right to remedy an alleged breach of the lease was not preempted by federal law, *id.*, 295 S.W.3d at 126–127. The landlord sought to evict Turner for violating her lease "after crack cocaine, powdered cocaine, and drug paraphernalia were found in a room in Turner's apartment where her nephew, Dazzamon Jones, who visited the apartment every other weekend, kept his belongings." *Id.*, 295 S.W.3d at 124. *Turner*, unlike this case, concerned a purportedly innocent tenant who could remedy the breach by not letting her

nephew stay with her, and thus could be distinguished from what we have here—an alleged past use of marijuana by the tenant.

¶ 14. We need not parse either *Scarborough* or *Turner* further because, as we have already set out at some length, the minimal right-to-cure period here (five days) and the overarchingly critical consequence of having a judicial tribunal ultimately decide whether, in fact, the tenant *has* cured (that is, the right to cure does not give the tenant a free pass for whatever "criminal activity" the Housing Authority contends violated the lease) persuades us that federal law does not preempt WIS. STAT. § 704.17(2)(b), to which, as we have already seen, the Housing Authority bound itself in the lease that it drafted. *See Walters v. National Properties, LLC*, 2005 WI 87, ¶¶ 13–15, 282 Wis. 2d 176, 184–185, 699 N.W.2d 71, 75–76 (ambiguities in leases and all contracts are construed against the drafter). The Housing Authority notice to Cobb did not comply with § 704.17(2)(b). Accordingly, the circuit court did not have competency to adjudicate the eviction action. *See Meier*, 254 Wis. at 75, 35 N.W.2d at 455. We reverse and remand and direct the circuit court to vacate the eviction judgment and the restitution order.

*By the Court.*—Judgment reversed, and cause remanded.