SHIRLEY S. ABRAHAMSON, C.J.
¶ 46. (dissenting). The Milwaukee City Housing Authority is attempting to evict Felton Cobb, a disabled 62-year-old public housing tenant, because Cobb smoked marijuana in his apartment. In deciding whether to effectuate this eviction, the court must be mindful of two important, sometimes conflicting, interests.
¶ 47. On the one hand, the goal of public and subsidized housing programs is to provide low-income individuals with "housing that is decent, safe, and free *389 from illegal drugs."[1] Eliminating drug-related criminal activity is a critical element of pursuing that goal.
¶ 48. On the other hand, "federal law does not provide for mandatory summary eviction [for drug-related criminal activity] but vests in local authorities the discretion" to evict.[2] In exercising such discretion, local housing authorities are "to be guided by compassion and common sense."[3]
¶ 49. Thus, public housing evictions based on drug-related criminal activity require the court to engage in a difficult balancing act. "[T]he Congressional intent is not to be overly harsh on tenants . . . but to look out for the best interests of all residents in housing developments receiving federal funding."[4]
¶ 50. I write separately to explain how I would balance the significant interests at stake in the present case.
¶ 51. The instant case was briefed and argued as a preemption case. Cobb asserts a right under a state law that the Housing Authority claims is preempted. The majority opinion rules in favor of the Housing Authority. I would rule in favor of Cobb.
¶ 52. Even assuming that the state law at issue is preempted (despite the presumption against preemption), I conclude that Cobb's eviction is contrary to *390 federal law. Federal law confers on the Housing Authority the discretion to evict Cobb under the circumstances presented in the instant case; it does not mandate that the Housing Authority evict everyone who engages in drug-related criminal activity.
¶ 53. Because the record before the court contains no evidence that the Housing Authority exercised discretion in evicting Cobb and because the parties did not argue the discretion issue, I would remand the cause to the circuit court to decide whether Cobb's eviction was a legitimate exercise of the Housing Authority's discretion to evict on the basis of drug-related criminal activity.
¶ 54. I briefly state the relevant facts.
¶ 55. The Housing Authority filed an eviction action against Cobb based on Cobb's violation of a lease provision prohibiting drug-related criminal activity. The Housing Authority determined that Cobb was engaged in drug-related criminal activity after a public safety officer reported smelling marijuana coming from Cobb's apartment and reported that the smell became stronger when Cobb opened his door.
¶ 56. It is undisputed that Cobb did not receive notice from the Housing Authority providing Cobb with five days to either remedy the lease violation or vacate the premises. Such notice is required under Wis. Stat. § 704.17(2)(b) (2011-12), which I refer to as the five-day notice statute.[5]
¶ 57. Cobb contends that he cannot be evicted without receiving the notice required by the five-day notice statute. The Housing Authority disagrees, arguing that the five-day notice statute is preempted inso *391 far as it requires local housing authorities to give tenants an opportunity to remedy drug-related criminal activity.
¶ 58. The Housing Authority's preemption argument is premised on an alleged conflict between 42 U.S.C. § 1437d(l)(6) and the five-day notice statute.
¶ 59. 42 U.S.C. § 1437d(l)(6) requires local housing authorities to utilize leases that provide that "any drug-related criminal activity. . . shall be cause for termination of tenancy." This provision was enacted as part of a larger effort to "provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs."[6]
¶ 60. Importantly, 42 U.S.C. § 1437d(l)(6) does not mandate eviction when a local housing authority determines that a tenant is engaged in drug-related criminal activity. Instead, as the Housing Authority acknowledges in the instant case, 42 U.S.C. § 1437d(l)(6) gives local housing authorities discretion to evict on the basis of drug-related criminal activity.
¶ 61. The Housing Authority maintains that the five-day notice statute is at odds with its discretion to evict on the basis of drug-related criminal activity. Requiring the Housing Authority to give tenants an opportunity to remedy drug-related criminal activity, the Housing Authority reasons, would enable tenants to avoid eviction regardless of whether a discretionary determination has been made that eviction is appropriate under the circumstances.
¶ 62. For purposes of this dissent, I assume that 42 U.S.C. § 1437d(l)(6) preempts the five-day notice *392 statute. I therefore assume that the Housing Authority has discretion to evict Cobb for drug-related criminal activity without giving him an opportunity to remedy his lease violation.
¶ 63. I conclude, however, that the record before the court contains no evidence that the Housing Authority exercised discretion in the present case. On the contrary, Cobb's eviction appears to be "a blind application of the law."[7]
¶ 64. Under United States Supreme Court precedent and federal regulations, blind application of the law does not constitute a legitimate exercise of the discretion conferred by 42 U.S.C. § 1437d(l)(6). Thus, in my view, Cobb's eviction is contrary to the federal law that the Housing Authority insists is controlling.
¶ 65. I briefly review the federal regulation and the United States Supreme Court opinion that inform my position.
¶ 66. The federal regulation set forth at 24 C.F.R. § 966.4(l)(5)(vii)(B) clarifies that although drug-related criminal activity "shall be cause for termination of tenancy,"[8] eviction will not always be necessary or appropriate when drug-related criminal activity is discovered. Rather, local housing authorities may consider the circumstances of the particular case to decide whether eviction will further the objectives underlying 42 U.S.C. § 1437d(l)(6).
¶ 67. The relevant text of this federal regulation is as follows:
[Local housing authorities] may consider all circumstances relevant to a particular case such as the *393 seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.[9]
¶ 68. In Department of Housing & Urban Development v. Rucker, 535 U.S. 125 (2002), the United States Supreme Court discussed and applied both 42 U.S.C. § 1437d(l)(6) and 24 C.F.R. § 966.4(l)(5)(vii)(B). The Court stated that 42 U.S.C. § 1437d(l)(6) "does not require the eviction of any tenant" who engages in drug-related criminal activity.[10] Rather, the Court explained, the federal law
entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," "the seriousness of the offending action," and "the extent to which the leaseholder has . . . taken all reasonable steps to prevent or mitigate the offending action."[11]
¶ 69. I agree with the concurring opinion of Judge Moore in Housing Authority of Covington v. Turner, 295 S.W.3d 123, 129 (Ky. Ct. App. 2009), that "[w]hile much discretion rests with the local Housing Authority, Rucker does require some thresholds to be met or facts to be taken into consideration for the *394 eviction of a tenant under 42 U.S.C. § 1437d(l)(6)." As Judge Moore so aptly put it: "[Discretion must be exercised, rather than a blind application of the law[,] because 42 U.S.C. § 1437d(l)(6) does not require evictions."[12]
¶ 70. The record before the court contains no evidence that the Housing Authority exercised discretion in deciding to evict Cobb. In other words, no evidence was presented to show "that the Housing Authority weighed anything in its decision to evict" Cobb.[13]
¶ 71. The eviction action was filed shortly after a public safety officer determined that Cobb was smoking marijuana in his apartment. There is no evidence that any further investigation took place in the interim. There is no evidence that the particular housing project in which Cobb resides "suffers from 'rampant drug-related or violent crime.' "[14] There is no evidence that Cobb has previously engaged in drug-related criminal activity or any other lease violations. Finally, with regard to "the seriousness of the offending action,"[15] the circuit court observed that the drug-related criminal activity Cobb engaged in "is the lowest of criminal activities."
¶ 72. I conclude, as did Judge Moore, that "reliance on 42 U.S.C. § 1437d(l)(6) alone is insufficient where the local housing authority has not made a showing of evidence that it weighed the policy considerations behind evictions in drug-related cases in pub- *395 lie housing."[16] In the present case, the Housing Authority has made no such showing.
¶ 73. For the reasons set forth, I dissent.

 Dep't of Housing & Urban Dev. v. Rucker, 535 U.S. 125, 134 (2002) (citation omitted).

 Housing Auth. of Covington v. Turner, 295 S.W.3d 123, 126 (Ky. Ct. App. 2009).

 This quote comes from a letter issued to local housing authorities by Mel Martinez, the former Secretary of the United States Department of Housing and Urban Development. The letter, dated April 16, 2002, was filed as an exhibit in support of Cobb's motion to dismiss.

 Turner, 295 S.W.3d at 128 (Moore, J., concurring).

 All subsequent references to the Wisconsin Statutes are to the 2011 — 12 version unless otherwise indicated.

 Rucker, 535 U.S. at 134 (citation omitted).

 See Turner, 295 S.W.3d at 129 (Moore, J., concurring).

 42 U.S.C. § 1437d(l)(6).

 24 C.F.R. § 966.4(l)(5)(vii)(B).

 Rucker, 535 U.S. at 133-34.

 Id. (citations omitted).

 Turner, 295 S.W.3d at 129 (Moore, J., concurring).

 Id.

 Rucker, 535 U.S. at 133-34.

 Id.

 Turner, 295 S.W.3d at 129 (Moore, J., concurring)